THE FLORIDA CENTRAL AND PENINSULAR RAILROAD COMPANY, A CORPORATION UNDER THE LAWS OF FLORIDA, PLAINTIFF IN ERROR, VS. WILLIAM J. BELL, ELIZA ANN BELL, FRANK A. BELL, MATILDA P. FIEHE (*nee* BELL), ANTON FIEHE, SIMON L. BELL, JOHN WALTER BELL, GEORGE A. BELL AND FLORENCE BELL, DEFENDANTS IN ERROR.

1. A railroad corporation organizd under the general incorporation laws of this State with respect to railroads and canals has power under paragraph 4 of section 2241 Revised Statutes, and section 2158 Revised Statutes, to condemn property for its right of way along the route of its main line, or along the right of an extension of its main line, which it is lawfully authorized to construct.

2. Where a railroad corporation organized prior to the adoption of the Revised Statutes under the general incorporation laws of this State with respect to railroads and canals, by resolution of its board of directors entered in the records of its proceedings (a certified copy thereof being filed with and recorded by the Secretary of State), designated the route of a proposed extension of its railroad from a point therein designated, being a point named in its charter or articles of association, to a point named in such resolution, both points being stated to be situated in a named county in this State, in compliance with section 12 of Chapter 1987, approved February 19, 1874, it thereby acquired power and authority without any amendment of its charter or articles of association to make such extension the same as if it had been authorized in its charter or articles of association, even though such resolution failed to state the length of such extension.

3. By section 1559 Revised Statutes, a railroad corporation arthorized to condemn property for its use, is authorized to proceed under section 1544 *et seq.* Revised Statutes, to condemn lands actually used by it for a right of way along its line of railroad, where it has not previously acquired the right to such use.

4. A petition for condemnation alleging substantially all that is required by section 1544 Revised Statutes, is sufficient, and where the description of the property sought to be condemned as given in the petition points out definite and ascertainable boundaries therefor, such description is sufficient.

Writ of error to the Circuit Court for Hillsborough County.

## Statement.

On February 11th, 1897, plaintiff in error filed its amended petition, in certain condemnation proceedings then pending between it and the defendants in error begun December 21, 1896, wherein it was alleged, first, that petitioner was a corporation organized and existing under the laws of this State; that it was organized for the purpose of constructing, maintaining and operating a railroad for the public use of conveyance of persons and property, and for maintaining and operating certain railroads already constructed for like uses; that it has the right to condemn for its uses the lands in the petition described; that the company's railroad was then actually constructed; on and across the lands sought to be condemned; that said lands were essential for the use of the corporation; that petitioner had made its survey and maps thereof by which its road or line is designated; that it had located its road and track according to such survey and had filed its certificate of such location, signed by the chief engineer of the company, in the office of the clerk of the Circuit Court for Hillsborough county; that the use of said lands was necessary for the purpose of operating its railroad; that petitioner had not acquired the right to use the same nor had it legal title to same.   Second, that it had constructed its track upon the following described property in said county, to-wit: the right of way through lot 8, section twenty-four, township twenty-nine south, of range eighteen east, Fort Brooke reservation, known as the Bell property, and commencing at a point, which point is the intersection of center line of Florida Central & Peninsular Railroad and the range

line between ranges eighteen and nineteen, thence south 108 feet more or less to a point on said range line, thence south 66° 10' west 1424 feet more or less, to line dividing lots 8 and 9; this last line being 100 feet distant from and parallel to centre line of said railroad, thence north along said dividing line between lots 8 and 9, 216 feet, more or less, to south line of Whiting street, more particularly described as north line of Fort Brooke reservation, thence north 66° 10' east along said north line of Fort Brooke reservation 100 feet, thence at right angles to said north line south 23° 50' east 75 feet to a point, which point is 25 feet from centre line of said railroad, thence north 66° 10' east 1300 feet, more or less, to said range line, being 25 feet distant from and parallel to centre line of said railroad, thence south along said range line 26 feet, more or less, to point of beginning, containing 4.29 acres, more or less: that petitioner's said track occupied said land and was being used by it for the purposes of transportation of its cars for ordinary railway purposes, and that it desired to condemn said property for the purposes aforesaid and that said land was on its line, located as aforesaid. Third, that the names of the occupants of the property, their places of residence, legal disabilities, if any, and the interests of all the owners and mortgagees which by diligent search and inquiry petitioner had been able to ascertain were as follows, naming each of the defendants in error, and alleging that all of them were of said county of Hillsborough and over twenty-one years of age. Fourth, that the purpose of taking said property was that the title to said property which was then the right of way of the petitioner, and which was also its main line from the city of Tampa to the city of Jacksonville, and necessary for the operation of its cars to and from said points for the pur-

pose of carrying passengers and freight, might be vested in the petitioner for the purposes aforesaid; that said line also extended to other points in the State of Florida and in other States, and that said location and line was made under and by virtue of the rights, privileges, franchises and authority heretofore conferred upon petitioner by law. Fifth, that petitioner was seeking to obtain said right of way in good faith; that it had not only located its line over said right of way above described, but that it had actually constructed the same and was then in possession of said above described property, for the purposes set forth aforesaid.

Petitioner prayed that the property described in the petition be condemned for the uses and purposes therein mentioned; that process issue to the parties interested to show cause, if any they could, why said property should. not be condemned for the uses and purposes aforesaid. The petition was duly signed and sworn to by counsel for petitioner.

On November 20, 1897, defendants in error filed their answer to the petition alleging, first, that William J. Bell, Eliza Ann Bell, Frank A. Bell, Matilda P. Fiehe(nee Bell) and John Walter Bell were the children and heirs at law of Louis Bell, Sr., late of said county of Hillsborough, who died in the year 1885; that Simon Bell and George A. Bell were the children of Louis Bell, Jr., a son of Louis Bell, Sr., who died before his father, and that Florence Bell was the wife of said Louis Bell Jr., and Anton Fiehe was the husband of said Matilda Fiehe. Second, that on July 21, 1896, the United States Government granted, issued and delivered a patent for all of lot 8, section twenty-four, township twenty-nine south of range eighteen east, mentioned in the petition, to said Louis Bell, Sr., and his heirs.

which patent had been recorded in said county and that by
force and effect of said patent, the legal title to and bene-
ficial ownership of all of said lot became vested in fee
simple in the defendants in error who were alleged to be
the heirs of said Louis Bell, Sr. A copy of the patent was
attached to the answer marked exhibit A. Third, that
petitioner had not in and by its petition stated sufficient
facts to entitle it to a judgment condemning any part of lot
8 under the laws of eminent domain of this State, and re-
pondents claimed the same benefit and advantage of such
objection and to the jurisdiction of the court as if they had
demurred to the petition upon the following grounds, *viz*:
A. The petition does not contain any facts sufficient to
give the court jurisdiction to render the judgment prayed
for. B. The petition does not state facts establishing the
legal right under the laws of eminent domain to have any
of the lot condemned for its uses and purposes of a right
of way for its railroad track; nor does it show that any
part of said lot is located within the chartered route of the
line of railroad which petitioner was authorized to con-
struct. C. The petition does not state facts establishing
the necessity of condemning any part of said lot for the
public uses of petitioner as a railroad company. D. The
petition does not state facts showing the uses and purposes
for which petitioner prays to have a part of the lot con-
veyed. Fourth, that long prior to the filing of the petition
the respondents brought their certain bill in equity in the
Circuit Court of the United States for the Southern dis-
trict of Florida against petitioner for the purpose of
enjoining and praying that it be temporarily and perma-
nently enjoined from running its trains upon any part of
the lot and from conveying any part thereof on the ground
among others, that under the laws of this State petitioner

had no legal right to condemn any part of said lot to its uses, and on the ground that petitioner is and has been for some time a trespasser on said lot; that in said bill it was alleged and facts were set forth showing that respondents claim rights and titles to said lot under the laws of the United States and that petitioner denies such title and rights and asserts the right to occupy said lot with its railroad under he laws of the United States, and that said bill alleges that Wm. J. Bell and John Walter Bell were citizens of the State of Texas, and were citizens of said State at and before the time said bill was filed; that petitioner appeared in said suit long before its petition was filed in this case; that the Federal court has taken jurisdiction of said suit, granted orders therein before this petition was filed and had acquired in said suit jurisdiction of the question whether or not petitioner had the legal right under its charter and the laws of Florida to have any part of said lot condemned for the uses and purposes under the laws of eminent domain, which would more fully appear in the record of said suit, and respondents thereby pleaded the pendency of said suit in the Federal court and the proceedings had therein, in bar of the petition. Fifth, that if the "foregoing objections are all overruled by the court," respondents further aver that the description of the lands sought to be condemned in said petition is too uncertain and indefinite to entitle petitioner to the judgment it prays for, or to enable a jury to assess and award damages to respondents. Sixth, that no part of lot 8 is between the termini and within the chartered route of the line of railroad of petitioner specified and mentioned in its articles of association, nor within such termini and chartered route as specified in the letters patent issued by the State to petitioner; that petitioner was first organized in 1888 and was

organized under the General Incorporation Acts of the legislature in respect to railroads and canals, and not otherwise. Seventh, that petitioner before it trespassed upon the said lot and constructed its road across same, which was in the latter part of 1889 and the early part of 1890, had obtained from the city of Tampa, within the limits of which said lot was and is located, a license and authority by an ordinance of the council of said city to locate and construct its road on Whiting street of said city, which said street is north of said lot 8, and that said ordinance and subsequent ordinances of said council granting such license and authority have remained and still remain in full force and effect; that respondents were in possession of said lot 8 and occupied same under and by virtue of a compliance with the laws of the United States in respect to pre-emption claims and other laws of the United States long before and at the time petitioner trespassed upon and constructed its railroad across the said lot against the protests, remonstrances and consent of respondents, and that respondents had brought a suit of ejectment in the Federal court against the said petitioner to eject it from the said lot, which suit was brought before said petition was filed in this court, and is still pending and undetermined. Eighth, that section 7 of Article 2 of the articles of association of petitioner expressly designates and makes "Plant City" in Hillsborough county the Southern terminus of the road of said petitioner, and that said section is in the following words, to-wit: "From Waldo in the county of Alachua, through the counties of Alachua, Marion, Sumter, Hernando and Hillsborough to Plant City in said county of Hillsborough," which will fully appear from and be estabilshed by the said articles

of association, a certified copy of which is now exhibited to the court. Wherefore respondents prayed that the petition be dismissed at petitioner's cost.

This answer was duly signed and sworn to, and there was annexed thereto a patent from the United States to Louis Bell and his heirs, conveying lot number 8, section 24, tp. 29 south, range 18 east, Hillsborough county, Florida.

On March 5, 1897, the cause came on to be heard before the judge upon the petition and answer, and at the hearing the parties introduced evidence, and thereupon the court entered its judgment reciting that the cause was heard upon the amended petition, answer and evidence submitted, and adjudging that the petition be dismissed, but without prejudice to the filing of a new petition by the petitioner. From this judgment the present writ of error was taken, and the errors assigned question the propriety of the judgment entered and insist that the judgment should have been for the petitioner.

From the articles of association of petitioner introduced in evidence it appears that petitioner was by Article Second thereof declared to be authorized to acquire or construct certain lines of railroad designated in ten sections of that article. Sections seven and ten are the only ones material to consider at this time, and by them it was declared that certain portions of the lines of railroad should "be located as follows": "7. From Waldo in the county of Alachua, through the counties of Alachua, Marion, Sumter, Hernando and Hillsborough to Plant City in said county of Hillsborough." "10. From Wildwood in the county of Sumter, through the counties of Sumter and Orange to Tavares, in said county of Orange, with such spurs, branches and extensions as may be found

necessary or expedient in the counties of Polk, Manatee, DeSoto and Lee." Article third is as follows: "The length of said railroad shall be about six hundred miles." It further appears that in the year 1889 petitioner concluded to extend its railroad from Plant City to Tampa and the waters of Hillsborough and Tampa bays, and on October 31st of that year its Board of Directors adopted the following resolution which was entered upon the minutes, viz: "Resolved that the president be and he is hereby authorized to contract with responsible parties for the construction of an extension from Plant City, the present terminus of the company's road in Hillsborough county, to Tampa in said county." A copy of this resolution certified by the secretary of the company, under seal, was on January 30, 1890, filed in the office of the Secretary of State, and by him was recorded. The minutes of an adjourned regular meeting of the Board of Directors of the company held January 3rd, 1890, show the following proceedings:

"The president called the attention of the board to the fact that the present charter of the company did not provide for the extension of its lines in the county of Hillsborough, and hence to Tampa, nor in any of the counties adjacent to or through which the company's line runs, and requested the direction of the board. Whereupon, upon motion of Mr. Henderson, seconded by Mr. W. B. Cutting, it was unanimously resolved that the articles of association of the Florida Central and Peninsular Railroad Company be amended by adding to section ten, Article 2, the following words: 'Hillsborough, Lake and Orange and all other counties through which and adjacent to which the road of said company and its various branches are or may be constructed;' also resolved that this amendment

be submitted to the stockholders' meeting to be held on March 6th, 1890, and that the notice required by law be duly given with a view to secure the vote of the requisite stockholders thereon." A copy of the minutes of these proceedings certified by the secretary of the company under seal was filed January 30, 1890, with the Secretary of State and by him was recorded. The minutes of the annual meeting of the stockholders of the petitioner held March 6th, 1890, show the following proceedings: "Mr. Engler offered the following resolution, which was unanimously adopted: Whereas by resolution of the board of directors of this company, regularly adopted heretofore, to-wit: on the 31st day of October, 1889, and the 3rd day of January, 1890, for the purpose of extending the railroad of this company from and to the points therein named, designated a route from Plant City to the waters of Tampa Bay near the city of Tampa, a distance of twenty-two and a half miles, wholly in the county of Hillsborough, and from Tavares, in the county of Lake, to Orlando, in the county of Orange, a distance of thirty-two miles, and running through the counties of Lake and Orange, as the proposed extensions of its said railroad, upon which routes it detaining and operating its lines of railroad; and whereas, the directors filed certified copies of such resolution in the office of the Secretary of State, and caused the same to be recorded as provided by law; now therefore, be it resolved that the action of the Board of Directors of this company in amending its charter so as to give to it the right to make such extensions and to acquire such other railroad be, and the same is, hereby in all respects confirmed, ratified and approved; and further resolved that the necessary authority is hereby given to the president of the company

F. C. & P. R. R. Co. v. Bell et al.—Opinion of Court.

to construct branches or extensions from the line of its railroad through any of the counties of the State of Florida." A copy of these minutes of these proceedings certified by the secretary of the company under seal was filed March 10th, 1890, with the Secretary of State and by him was recorded. The property sought to be condemned is a part of the right of way of the petitioner's road on the line laid out and actually constructed as an extension of its main line from Plant City to Tampa.

The other facts are stated in the opinion of the court.

*P. O. Knight,* for Plaintiff in Error.

*H. Bisbee,* for Defendants in Error.

CARTER, J., (*After stating the facts.*)

These proceedings were begun and conducted under the provisions of sections 1544 *et seq.* Revised Statutes, regulating the exercise of the right of eminent domain; and section 1559 provides that in any case where the petitioner shall not have acquired title to any lands which it is using, it may proceed under those sections of the Revised Statutes to acquire such title. Section 1544, so far as applicable to this case, provides that in all cases where the right to take private property for public use without the consent of the owner has been heretofore or shall be hereafter conferred by the constitution, general law or special charter, upon any corporation, it may file a petition in the office of the clerk of the Circuit Court of the county wherein the property lies, which petition shall set forth, first, the authority under which petitioner claims

43 Fla. 25.

the right to take the property for public use; second, a description as accurate as may be of the property sought to be taken; third, the names of the occupants of the property and names, places of residence, legal disabilities (if any) and the interests of all owners and mortgagees, if the same by diligent search and inquiry can be ascertained; fourth, the purpose of the taking and that the property is necessary for that purpose; fifth, that petitioner has located its line and intends in good faith to construct same over the property.

There is incorporated in the third paragraph of the answer of the respondents objections by way of demurrer to the petition. If we concede that objections of this character can properly be raised by answer, we fail to see wherein this petition is insufficient. We shall see in discussing another paragraph of the answer that the description of the land sought to be condemned is sufficient, and we think in all other respects the allegations of the petition are sufficient under the statute quoted.

No proof was offered to sustain the allegations in reference to the suits in equity and ejectment alleged to have been pending in the United States courts, mentioned in the fourth and seventh paragraphs of the answer, nor was any proof offered with respect to the allegations in paragraph seven regarding the license and authority granted petitioner by the city of Tampa to construct its road upon Whiting street in that city; consequently further reference to these matters is unnecessary.

The fifth paragraph of the answer questions the sufficiency of the description of the lands sought to be condemned. It is argued by defendants in error that the use of the word "about" in the description renders it uncertain, but we fail to find that word used in any manner

whatever in connection with the description contained in the abstract. The words "more or less" are used several times in stating the length of certain boundary lines, but these words are in each instance followed by language indicating definite points as the ends of those lines, and the latter language of course controls in running the lines. The description given points out definite and ascertainable boundaries for the parcel of land sought to be condemned, and is entirely sufficient.

The only matters set up in the answer left for consideration are those relating to the authority of the company to extend its road from Plant City to Tampa and to condemn property for its use on that part of its line. The company was organized in July, 1888, under the General Incorporation laws of this State in respect to railroads and canals. According to its articles of association one of its lines extended from Waldo in Alachua county to Plant City in Hillsborough county. It is not denied that the company was legally incorporated, nor that the line from Plant City to Tampa would be an extension of the line from Waldo to Plant City, which last named line was specially embraced in its original articles of association and the charter issued to it. It is contended, however, that the company could not extend its line from Plant City to Tampa without an amendment of its charter or articles of association, and that the amendment attempted to be made in 1890 is not sufficient to authorize the construction of such extension. Petitioner was incorporated under the provisions of Chapter 1987, approved February 19, 1874. By section 1 of that act it was provided that any number of persons, not less than three, might form a company, and for the purpose of organizing were required to give public notice in a certain specified manner and to make and

sign articles of association, in which was required to be stated the name of the company, the places to and from which the road was to be constructed or maintained and operated, the length of such road, as near as may be, and the name of each county in the State through or into which it was made or intended to be made, the amount of capital stock, the number of shares into which it was to be divided, and the names and places of residence of the directors of the company who should manage its affairs for the first year, to consist of not less than three. Other requirements not necessary specially to notice are set forth; after compliance with which the Governor and Secretary of State were authorized to issue their certificate in the form therein prescribed, and thereupon the persons who subscribed the articles of association and all persons who should become stockholders in the company are declared to be a corporation by the name specified in the articles of association and declared to possess the powers and privileges granted to corporations and to be subject to the provisions contained in that act. It is not denied that all the provisions of this act were complied with in organizing the petitioner corporation.

By section 10, every corporation formed under the provisions of the act was empowered, among other things, to cause such examinations and surveys for the proposed railroad to be made as shall be necessary to the selection of the most advantageous route, and for such purposes by its officers, agents and servants to enter upon the lands and water of any person for that purpose, to lay out its road not exceeding two hundred feet in width and to construct the same, and for the purpose of cuttings and embankments, and for obtaining gravel and other material to take as much land as may be necessary for the

proper construction, operation and security of the road or to cut down any trees that may be in danger of falling on the road, making compensation therefor as provided in that act for land taken for the use of the company. Section 12 is as follows: "Any railroad or canal compay now existing or hereafter organized under the laws of this State may, under the provisions of this act, extend its railroad or canal from any point named in its charter or articles of association, or may build such branch roads from any point or points on its line of road. Before making any such extension or building any such branch road or canal such railroad company or canal company shall, by resolution of its board of directors, to be entered in the records of its proceedings, designate the route of such proposed extension or branch in the manner prescribed in section one of this act, and file a certified copy of such record in the office of the Secretary of State, and cause the same to be recorded as provided in said section, and thereafter such railroad or canal company shall have the right to make such extension or build such branch the same as if it had been authorized in its charter or articles of association."

It seems to be clear that no specific amendment of the articles of association or charter of a company organized under that act was necessary in order to enable such company to extend its railroad from any point named in its charter or articles of association, for the very statute under which it was incorporated gave it the right so to do under its original charter upon complying with the provisions of section 12, "the same as if it had been authorized in its charter, or articles of association." The limitations upon its right to extend were, that before making same the company must by resolution of its board of directors, to

be entered in the records of its proceedings, designate the route of such proposed extension in the manner prescribed in section 1 of that act and file a certified copy of such record in the office of the Secretary of State and cause the same to be recorded as provided in that section. It required no specific amendment of the charter, no action of the stockholders of the company, but simply a resolution of the board of directors designating the route of the proposed extension in the manner stated and the filing and record of same in the office of the Secretary of State, in order to authorize the construction of an extension of its road. We think the resolution adopted by the directors October 31, 1889, though inartificially drawn, a sufficient compliance with section 12 to authorize the extension without regard to the other proceedings of the directors and stockholders attempting to amend the articles of association. The resolution referred to designates the route of the proposed extension as being from Plant City to Tampa both in Hillsborough county, and the only defect that can be claimed in the designation of the route is the omission to state the length of the extension as near as may be. We can not see that this omission can in any manner affect the rights of persons whose lands are sought to be condemned along the route selected, and even if the statute contemplates its insertion in the resolution, we think its omission is a matter between the company and the State, in no manner affecting any substantial right of the respondents.

We have seen that the company was authorized to construct the extension, and it appears from the pleadings and evidence that such extension had in fact been constructed and in operation for several years prior to the institution of these proceedings. The only other question to be considered is whether the company is invested with

power to condemn property along the line of this extension. This right must be tested by the provisions of the Revised Statutes which were in force when these proceedings were begun. By paragraphs one and four of section 2241 Revised Statutes, the provisions previously quoted from section 10, Chapter 1987, approved February 19, 1874, are re-enacted and continued in force, and by section 2158 it is provided as follows: "The president and directors of any corporation organized for the purpose of constructing, maintaining or operating public works, or their properly authorized agents, may enter upon any lands, public or private, necessary to the business contemplated in the charter, and may appropriate the same, or may take from any land most convenient to their works any timber, stone, earth or other material which may be necessary for the construction and the keeping in repair of its works and improvements, upon making due compensation according to law to private owners." There is no doubt in our minds that railroad companies possessing the powers given petitioner by law, and organized for the purposes for which it was organized, are within the meaning of that section "organized for the purpose of constructing, maintaining or operating public works," and that by virtue of that provision and of paragraph 4 of section 2241 Revised Statutes the petitioner is given power to condemn property not only for the purpose of its main lines authorized by its original charter, but for extensions of such lines upon compliance with the terms of the statute authorizing such extension.

It follows from what has been said that the judgment of the Circuit Court is erroneous, and must be reversed.

The judgment is reversed, and the cause remanded for further proceedings conformable to law, and not inconsistent with this opinion.