GEORGE WILTON, W. A. CHAMBERS, H. W. GRIMES, JOSEPH C. KERCHEVAL, EDITH SCOVELL a widow, GEORGE W. SCOVELL and G. C. BROUGH, *Plaintiffs in Error,* v. COUNTY OF ST. JOHNS, a public corporation under the laws of the State of Florida, *Defendant in Error.*

Division B.

Decision of affirmance filed June 14, 1928.

Petition for rehearing granted September 25, 1928.

Judgment reversed June 13, 1929.

28

*George W. Bassett, Jr.,* for Plaintiff in Error;
*David R. Dunham* for Defendant in Error.

PER CURIAM.—This cause having heretofore been submitted to the Court upon the transcript of the record of the judgment herein, and briefs and argument of counsel for the respective parties, and the record having been seen and inspected, and the Court being now advised of its judgment to be given in the premises, it seems to the Court that there is no error in the said judgment; it is, therefore, considered, ordered and adjudged by the Court that the said judgment of the Circuit Court be, and the same is hereby affirmed.

WHITFIELD, P. J., AND TERRELL AND BUFORD, J. J., concur.

### On Rehearing

BROWN, J.—Sections 1734 et seq., Rev. Gen. Stats., now appearing as Sections 2785 et seq., Comp. Gen. Laws, provide a method by which the county commissioners may establish and order the construction of a public drainage ditch or canal in any of the counties of the State, whenever it shall be deemed necessary or expedient for sanitary or agricultural purposes or conducive to the public health, convenience or welfare or public utility or for the benefit of any lands that are low, wet, submerged or liable to become submerged, upon the filing of a proper petition as required by the statute, accompanied by a plat of the lands involved showing the general course of such proposed ditch or drain or canal and setting forth the cause for the same, its length, and the lands to be benefited thereby, etc. Provision is made for a notice by publication of the day when the petition will be heard, and if the petition is granted, for the appointing of a committee of three disinterested freeholders who shall have power to employ a surveyor and cause an accurate survey to be made, and shall establish the commencement, route and terminus of said ditch or drain or canal, width, length and depth thereof, and present the

same with plans, specifications and profiles for construction, together with an estimate of the approximate cost, and the annual cost of maintenance, to the Board of County Commissioners, who are then authorized to advertise for bids for such construction. The Act provides that whenever the survey for any such project shall run through the lands of any one who shall object thereto, the Board of County Commissioners can proceed to condemn the right of way and pay therefor out of funds arising from the levy and assessment thereinafter provided for. The statute provides that the petition, which forms the basis for the action of the County Commissioners, shall be signed by a majority of those owning such lands through which such proposed ditch, drain or canal shall run, or by those owning the greater part of the lands through which such ditch, drain or canal shall run, and by a majority of those owning lands, or by those owning the greater part of the lands, contiguous thereto that are benefited by such ditch, drain or canal.

Proceedings were had under this statute before the Board of County Commissioners of the County of St. Johns, the petition was granted, an order made for the construction of the drainage ditch petitioned for and a petition in condemnation proceedings was filed in the name of the County to condemn a right of way 50 feet wide through the lands of certain defendants, which resulted in a judgment of condemnation against the defendants, and which judgment is brought before us for review by writ of error.

The petition in the condemnation proceedings filed by the County of St. Johns was evidently brought under Section 3276, Rev. Gen. Stats., et seq., being Sections 5084 et seq., Comp. Gen. Laws. It alleges the institution of the proceeding before the Board of County Commissioners for the establishment of the drainage ditch and the action of the commisisoners taken thereunder, which allegations show a

substantial compliance with the statutory procedure for the establishment of the ditch or drain and the adoption of a resolution authorizing the acquirement by condemnation proceedings of the right of way therefor. It alleges that the petitioner desires to construct said ditch, drain or canal for "a public purpose and use."

It contains a description of the property sought to be taken.

It alleges the purpose of the taking and that the strip of land 50 feet wide is necessary for that purpose.

It alleges the names of the occupants and owners of the property sought to be condemned and place of residence, etc.

Thus the petition contains all the allegations required by Section 5084, Comp. Gen. Laws, 3276 Rev. Gen. Stats., except as to paragraph 5 of that Section which was intended to apply to railroad corporations and municipal corporations.

The petition also alleges the "interest or estate in said property to be acquired," as provided for by Section 1505, Rev. Gen. Stats., 2283 Comp. Gen. Laws, with reference to the exercise of the right of eminent domain by counties. This allegation is not necessary under Section 3276, Rev. Gen. Stats., 5084 Comp. Gen. Laws above referred to relating to condemnation proceedings generally. It would appear that the pleader framed the petition so as to make its allegations sufficient under either or both of the statutory proceedings pertaining to the exercise of eminent domain, the general statute on the subject being by its terms made expressly available for proceedings by counties, without express limitations, whereas the statutory procedure enacted especially for the use of counties, Section 1503 et seq., Rev. Gen. Stats., 2281 Comp. Gen. Laws, et seq., are expressly made applicable only to the acquisition of

property for a "county purpose." Counsel for petitioner in the court below may have thought that this proceeding was not, strictly speaking, for a county purpose; that it might be construed as pertaining to a very small fraction of the county, and hence entirely local in its nature, inasmuch as the proposed drain did not appear to be connected up with any county system of drainage, and the cost of the work was not to be paid for by the county; and therefore, to make sure, he framed the petition so as to comply with the requirements of both the statutory systems. Whether it be, strictly speaking, a county purpose or not, the drainage statute above mentioned confers upon the county commissioners the power of eminent domain for the condemnation of such lands as are necessary for the construction of any drainage ditch or canal lawfully authorized by such board, and we think the right to proceed in the name of the county as petitioner is necessarily implied. And whether this action could have been maintained under these sections of our statutes relating to condemnation by counties, as being for a "county purpose," it is not necessary for us to decide, as it is quite plain that, under the allegations of the petition, the county was authorized to proceed under the general statutory system for condemnation proceedings above referred to.

The court below was therefore free from error in denying the defendant's motion to quash the amended petition and in overruling the defendant's demurrer thereto. The defendant filed an answer to the amended petition which contained many vague, equivocal and irrelevant averments. It does, however, contain certain specific denials and allegations. It denies that the petition filed with the county commissioners was signed by the majority of those owning lands through which the proposed ditch should run, or that it was signed by the majority of those owning land

contiguous thereto, or that it was signed by a majority of those owning the greater part of such land, together with a plat of said land showing the general course of such proposed ditch, drain or canal as required by law. It also denied that the Board of County Commissioners gave due notice and hearing on the petition as required by law. It denied that the Board adopted the resolution authorizing condemnation as alleged in the amended petition. These were material averments. 20 C. J. 881-891; 948.

The answer also denies in general terms that "the said petitioner intended to construct said ditch, drain or canal for a public purpose and use" or that its construction was in fact a public purpose; also it denies that "it is necessary that the petitioner acquire and obtain an easement over, through and across the above mentioned and described lands." It further denies "that it is necessary to take the lands aforementioned and described for the purpose of permitting the flow of water for drainage purposes." But the force of this last denial is largely destroyed by the equivocal words immediately following it, typical of many other allegations in the answer, which are: "They deny that they have knowledge or infomation sufficient to form a belief as to whether or not the aforesaid lands are necessary for constructing the ditch, drain or canal in the manner and as contemplated by the original plans, specifications and profiles submitted by the committee." The court was not at all concerned with the "belief" of the defendants on this question.

Further answering, it is also alleged that the proposed ditch, drain or canal is not for any County purpose, or any public use but is for the private use and benefit of private individuals and corporations and that the County Commissioners are not authorized to maintain the proceedings for the use and benefit of such private persons and corporations.

The sixth paragraph of the answer reads as follows:

That the said ditch, drain or canal as proposed will materially, greatly and irreparably damage and injure the lands set forth and described in the petition as amended herein in that the said ditch, drain or canal as proposed will overdrain the said lands in certain seasons of the year and will not supply sufficient drainage in other seasons of the year, and that said proposed ditch, drain or canal is not the natural and feasible course for the said drain, ditch or canal as proposed or for any ditch, drain or canal; these defendants further advise this Honorable Court that they are informed and believe and thereupon allege that drainage of the lands set forth in the Petition herein can be had with less expense to the owners of the said lands and without injury to the lands as above set forth in the petition herein, or to any of the lands sought to be drained by said ditch; that the condemnation of the lands set forth and described in petition herein and the establishment of the proposed ditch, drain or canal will subject these lands and property of these defendants to burden and taxation without corresponding benefit.

The last paragraph charges that ''the lands sought to be acquired by petitioner in this proceeding are not necessary for the purpose of obtaining drainage for the lands included within the district outlined in the petition herein.''

The petitioner filed a motion to strike the answer upon various grounds, the gravamen of which was that it attempted to review the action of the board of county commissioners as to matters resting within their discretion and presented issues that were *res adjudicata* and which

should have been presented at the hearing before such board, and which could not properly be made issues in the condemnation proceedings.

The motion to strike the answer was granted, and the case set for trial. The defendants then filed a protest, alleging that the action of the court deprived them of any opportunity to assert their constitutional rights, and tendered and asked permission to file an answer substantially the same as the answer which had been stricken. This motion was denied by the court. The question had already been ruled upon, and regardless of whether the court's action thereon had been correct or not, counsel were not authorized to attempt to refile a pleading which was practically identical with one which the court had stricken. This probably accounts for the action of the court in adding to its order the rather unusual clause that ''the defendants be and they are hereby denied the right to answer the petition in the above entitled cause.'' Whether this was erroneous, it is not necessary to consider. The case hinges upon the action of the court in striking the original answer. If this action was correct, then the action of the court in denying the motion of the defendants to file a similar answer would not constitute error. After the making of the above order, the defendants declined to take any part in the further proceedings before the jury for the assessment of damages, but ''not waiving any of their rights to show cause why the land would not be taken, and to answer the proceedings.''

There was verdict and judgment for the petitioner, and defendants took writ of error.

At the outset of a discussion of the principles involved, it would appear that our statutes give the defendants in condemnation proceedings the right to answer and to thereby raise certain questions and assert certain rights in his defense.

Thus, under Section 5084, Comp. Gen. Laws, the petitioner must allege the purpose of the proposed taking and that the same is for a public use; also that the property is necessary for that purpose. Section 5087 provides for the service of notice upon the defendants requiring them to appear and show what interest they have in the property "and to show cause why it should not be taken for the uses and purposes set forth in the petition." And Section 5089 says that: "If no cause be shown to the contrary, the judge of the Circuit Court shall cause a jury of twelve men to be empaneled to try what compensation shall be made to the defendants for the property sought to be appropriated," etc. This indicates that the court shall first determine the question whether any cause be shown why the property should not be taken before submitting the question of compensation to the jury.

Under Section 2281 et seq., Comp. Gen. Laws, the county's petition must allege the "purpose for which the property is to be acquired," and notices to appear and show cause why the property should not be taken, must be served upon the defendants similar, to those provided for under Sec. 5087, Comp. Gen. Laws, and the provision is likewise made that the jury shall try the question of compensation.

Both statutory systems provide for entry of defaults against those "not appearing or answering."

These statutes therefore imply that a defendant can by his answer set up any good and valid defense he may have which would "show cause" why his property should not be taken "for the uses and purposes set forth in the petition," and that such questions should be determined by the court *in limine,* before empaneling a jury, for if the court determines such preliminary questions adversely to the petitioner, it would of course not be necessary to try the

question of what compensation should be paid. And it would also appear that at least as to those essential allegations of the petition which the statute requires the petitioner to make, and which are in the nature of jurisdictional conditions precedent to the exercise of the power of eminent domain under such statutes, if the defendant denies them in his answer, or otherwise by properly pleaded allegations of fact, shows "good cause" why the petition should not be granted, he would be making such an answer as is contemplated and authorized by the language of the statutes.

Thus the statute (Sec. 5084, C. G. L.) requires the petitioner to allege in its petition for condemnation the "authority" under which the petitioner claims the right to take the property "for public use." The petitioner in this case alleged its authority to be the action of the county commissioners in establishing a drainage ditch on petition filed under the drainage statute. The defendants in their answer denied the validity of such authority and alleged that the petition was not signed by a majority of the owners, or the owners of a major portion of the land, involved, as required by the statute. As the authority of the county commissioners to act could not attach until such a petition as the statute prescribed was filed, this allegation of the answer was pertinent.

But the mere categorical denial of the answer that the construction or excavation of the drainage ditch was for a public use, or the mere allegation that it was not for a public use, was hardly compatible with the rules of good pleading. This allegation was in the nature of a mere legal conclusion of the pleader. The answer should have gone further and alleged the facts supporting this conclusion. Nor was the allegation to the effect that the proposed drainage ditch was to be for the use and benefit of private individuals and corporations sufficient. This might be true, without

denuding the project of its public character, for such private individuals and corporations might constitute such a portion of the public as would come within the valid operative purpose of the drainage statute and authorize the exercise of the power of eminent domain in the accomplishment of that purpose.

The statute (Sec. 5084, C. G. L.) also requires the petition for condemnation to show "the purpose of the taking" and that the property sought to be taken is "necessary for that purpose." It necessarily follows that the answer of the defendant would be good under the statute if by its allegations it showed that the taking of his property was not in any way necessary to the accomplishment of the purpose so alleged. But again, this should be done by allegations of facts and not by mere statements of the bald opinions or conclusions of the pleaders.

This court, in harmony with the weight of authority, has held that proceedings for the condemnation of property under the power of eminent domain are governed and controlled by the statutes authorizing them, and these statutes must be strictly construed and substantially complied with in all proceedings instituted thereunder. Fla., C. & P. R. R. Co., v. Bear, 43 Fla. 319, 31 So. R. 287.

In the case of Isleworth Grove Co. v. County of Orange, 79 Fla. 208, 84 So. R. 83, this court, speaking through MR. JUSTICE WHITFIELD, said:

When acting in good faith and within their statutory authority, county commissioners are by law accorded a wide administrative discretion which will not be controlled by the courts unless illegally or abuse of discretion is shown. If an assertion by county commissioners of the right of eminent domain is admitted or proven to be in fact for a private purpose and not

for a county purpose, there is no right to exercise the authority; and the action taken therein may be enjoined in appropriate proceedings by a proper complainant. See Childs v. Daugherty, 73 Fla. 72, So. R. 783. If a plain case of the abuse of the right of eminent domain by county commissioners is shown, the law affords a remedy in due course at the instance of proper parties. See Willis v. S. R. & B. Dist. No. 2, 73 Fla. 446, 74 So. R. 495. See also in this connection Bowden v. Ricker, 70 Fla. 154, 69 So. R. 694, and Osban v. Cooper, 63 Fla. 542, 58 So. R. 50.

The case quoted from was one in which the appellant had filed a bill to enjoin condemnation proceedings brought by Orange County to acquire land for the construction of a road which had been established as a public road by the county commissioners. The bill alleged that the proposed road was for a private, and not for a public, purpose, and set out facts sufficient, as against demurrer to the bill as a whole, to sustain this charge. The action of the trial court in sustaining the demurrer to the bill was reversed. But the appellee in this case contends that while the defendants in the court below might have raised the questions attempted to be raised by their answer by filing a bill to enjoin the condemnation proceedings, or some other ''direct'' method of attack, they could not do so by way of answer to such proceedings, as it amounted to a ''collateral attack'' upon the proceedings had and orders made by the board of county commissioners in the establishment of the drainage canal, and also constituted an effort to review such proceedings, neither of which could be allowed in defending against the condemnation proceedings. The answer to this is that such a bill to enjoin the condemnation proceedings is more in the nature of a

collateral attack than an answer filed in the condemnation proceedings. It is also pointed out that in the case of Spafford v. Brevard County, 92 Fla. 617, 110 So. R. 451, writ of *certiorari* was resorted to. But this observation is manifestly not in point in respect to this contention. It is further argued that the defendants in the court below should have raised all these questions on the hearing before the county commissioners for the establishment of the drainage ditch, notice of which had been given by publication, and that the action taken by the commissioners was binding upon the defendants and is *res adjudicata* as to all these questions, and hence was not subject to attack in the condemnation proceedings.

At this point we might observe that the board of county commissioners is an administrative and not a judicial body and there is no right of appeal provided from their rulings, nor writ of certiorari to quash same, as is the case with court proceedings. Their decisions, as to matters committed by law to their discretion, are entitled to great weight, and, as we have seen, will usually be accepted and upheld by the courts unless fraud or abuse of discretion be clearly shown or unless it be made to appear that the action taken by such board was without lawful authority, or was beyond the authority conferred upon them by law, or taken without compliance with the conditions precedent which are prescribed by law to be complied with before their power to act comes into legal existence. 20 C. J. 888. It might also be observed that the action of an administrative body upon purely judicial questions cannot ordinarily preclude injured or aggrieved persons from resorting to the courts for the protection of their constitutional or legal rights. See State ex rel. Ellis, Atty. General, v. Gibson, 48 Fla. 162, 37 So. R. 651. Thus it was held in Spafford v. Brevard County *supra,* that, ''where the sovereign power of eminent

domain is delegated with limitations or conditions upon the exercise of the right, the owner of property sought to be taken under such delegated authority has a right to be heard in an appropriate tribunal upon the question of whether delegated authority is being duly exercised in taking his property." See also 20 C. J. 622.

While the legislature may, in providing for the condemnation of private property, determine in the first instance whether the use for which it is proposed to allow the condemnation is a public use, and such determination will be accorded great weight by the courts, this legislative determination is not final. It is universally held that whether a particular use is public or not, is a judicial question. Lewis, Em. Dom. 3rd ed., Section 251; 20 C. J., 549, et seq.; 10 R. C. L., 29-30; Sears v. City of Akron, 246 U. S. 242, 62 Law. ed. 688; Spafford v. Brevard County, *supra*. See also note in 22 L. R. A. N. S., pages 23 and 50. But Nichols on Eminent Domain, departing somewhat from the accepted rule, says that the real question for the courts to decide is not whether the proposed use is a public one, "but whether the legislature might reasonably consider it a public one." This is but another way of saying that all reasonable presumptions will be indulged by the courts in favor of the validity and constitutionality of legislative determination, but the courts must in the end determine the question. They cannot escape it under our constitutional system of government. The legislature cannot, under the guise of the exercise of the vast public and sovereign power of eminent domain which can only be exerted for a public purpose, take without his consent one citizen's property and give it to another for his mere private use, even though compensation be paid. Cooley's Const. Lim. 8th ed., 1124; 10 R. C. L. 27; 20 C. J. 548; note to Re Tuthill, 49 L. R. A., 781. To do so would also come in

conflict with the fourteenth amendment to the federal constitution, as a deprivation of property without due process of law. O'Neill v. Leamer, 239 U. S., 244, 60 Law ed., 249; Fallbrook Irrigation Dist. v. Bradley, 164 U. S., 112, 41 Law ed. 369.

The use may, however, be local or limited, and yet be a public use. Section 254 of Lewis on Em. Dom. reads as follows:

"It is not necessary that the entire community, or any considerable portion of it, should directly participate in the benefits to be derived from the property taken. 'The public use required need not be the use or benefit of the whole public or State, or any large portion of it. It may be for the inhabitants of a small or restricted locality; but the use and benefit must be in common, not to particular individuals or estates.' A school-house site for a district of a dozen families is as undeniably for public use as the ground for a State-house. If the use is open to all upon equal terms who are so situated as to be able to enjoy the privilege, it is immaterial how few actually avail themselves of the right. The amount of benefit to be derived from a particular improvement or system of improvement is a consideration which addresses itself to the legislature, and not to the courts."

To like effect, see 20 C. J., 558; 10 R. C. L. 31, 32; Rindge Co. v. County of Los Angeles, 262 U. S., 700, 67 Law ed., 1186; 22 L. R. A. N. S. 48. It is held by some courts that the character of the use, rather than its extent, determines the question of public use. 20 C. J. 558. And by others, that it is enough if the people of a particular locality, though few in number, receive the benefit. 10 R. C. L., 31. And it is quite generally held that if the main object

for which land is taken is a public use, it obviously matters not that incidental benefit will inure to private individuals. 10 R. C. L., 32.

While in some jurisdictions there has been some conflict of opinion as to whether statutes providing for compulsory drainage of comparatively small tracts of land, where the owners are few in number, and a majority of them desire such drainage, while a minority object, can be upheld, either as a valid exercise of the police power, or, as an appropriate use of the power of eminent domain (10 R. C. L. 57-58; 20 C. J. 526; Lewis Em. Dom., secs. 283-4; Nichols Em. Dom. 246-250), the trend of opinion appears to be towards the position that private property cannot be taken and permanently devoted to a particular use, against the will of the owner, except by the exercise of the power of eminent domain (Lewis Em. Dom., Sec. 285-287; 10 R. C. L. 58), which makes it essential that the taking be for a public purpose. Re Tuthill (N. Y.) 49 L. R. A., 871, and note. And the courts quite generally have come to consider drainage district acts with favor as being for a public purpose, whether exercised for the benefit of the public health or for the reclamation or utilization of lands for agricultural purposes. Lewis Em. Dom. Sec. 286 et seq.; 10 R. C. L. 58-59; 20 C. J. 580; Hagar v. Reclamation Dest., 111 U. S. 701, 28 Law ed., 569; O'Neil v. Leamer, 239 U. S., 244, 60 Law ed., 249; Cooley Const. Lim., 8th ed., 1129; Lainhart v. Catts, 73 Fla. 735, 75 So. R. 47; Bannerman v. Catts, 80 Fla. 170, 85 So. R. 336; Taylor v. Tenn. & Fla. Land Co., 71 Fla. 651, 72 So. R. 206; Billing Sugar Co. v. Fish, 40 Mon. 256; 20 Anno. Cases, 264 and note, 272.

In order that drainage shall constitute a public use, it is not necessary that the advantages derived from the contemplated improvement shall extend as effectually to the

community outside the district as to those within it. It need not extend to the whole public, nor to any large portion of it. This is made necessary because in the very nature of things the benefits to be derived from improvements local in their character or peculiar in adaptation must be subject to the restrictions of locality and the necessities of individuals within such locality. See cases cited in note on page 275, 20 Ann. Cases.

It cannot seriously be contended that it was the intent of the statute under which the county commissioners acted in providing for the construction of the drainage ditch in question here (Sections 2785 et seq. Comp. Gen. Laws) that any such drain should be established and the power of eminent domain exercised thereunder for *private* benefit to the lands of a single individual. In this connection counsel for defendant in error has directed our attention to Sec. 28 of Art. 16 of our State constitution, which reads: "The legislature may provide for the drainage of the land of one person over or through that of another, upon just compensation therefor to the owner of the land over which such drainage is had." But the language of the statute here involved, in its various provisions, shows that it was not framed to carry into effect the purpose mentioned in the quoted section of the constitution, which section has no bearing upon the issues in this case. It is not necessary for us to discuss the rather interesting question whether legislative measures to carry this section of the constitution into effect could be validly framed under the police power or the power of eminent domain in such a way as would avoid conflict with the Federal constitution.

The statutes here in question, Sec. 2785 C. G. L., 1734 R. G. S., et seq., make it quite plain that, in authorizing condemnation proceedings for the acquirement of lands necessary to the excavation or construction of drainage

ditches or canals established thereunder, and for the purposes named therein, the legislature was authorizing such proceedings only for a *public* purpose. But that does not mean that the defendants in the court below are precluded from showing, if they can, that the use sought to be subserved in this particular case is one not contemplated by the statute; that it is in fact private rather than public. While the legislature may declare such drainage as outlined in the statute a public purpose, the courts have the ultimate power and duty to determine, when the question is properly presented, whether a particular improvement attempted to be made under the statute is in fact for a public or a private use; in other words, whether it is in fact such a drainage project as the statute contemplates and authorizes.

While, as we have seen, the question of public use *vel non* is ultimately a judicial question, yet if the purpose be a public one, the question of whether or not it is *necessary* to exercise the power of eminent domain to acquire the property for the accomplishment of such purpose, is generally held to be a *legislative question;* especially so in those instances where the legislature itself takes direct action. Lewis Em. Dom., Sec. 255, 369, 596, 597; 20 C. J. 624; 10 R. C. L., 183; note 22 L. R. A. N. S. 64; State v. Jacksonville, etc., Rl. Co., 20 Fla. 616; Rindge Co. v. County of Los Angeles, 262 U. S. 700, 67 Law Ed. 1186; Bragg v. Weaver, 251 U. S. 57, 64 Law Ed. 135.

And when the legislature delegates or grants the right to exercise the power of eminent domain to a public or quasi public corporation, or to a county, municipality, or some other administrative agency of government, for a public purpose, it may also, if there be no constitutional restrictions, delegate to such grantee the power to determine whether it is necessary to make any particular proposed

work or improvement for such public purpose, and the general rule is that such determination by the grantee of the power will not be disturbed by the courts, in the absence of fraud, or bad faith, or gross abuse of discretion. Lewis' Em. Dom., Sec. 597; 20 C. J. 626-628; 10 R. C. L., 183-185; Note, 22 L. R. A. N. S., 64, et seq. And this rule usually applies also to the route, or line, or location of the proposed work of improvement. See authorities above cited; also Rayford v. Bangor, 11 L. R. A. N. S., 940, and note; and F. E. C. Ry. Co. v. Shaw, 11 Fed. 2nd, 653.

But it is generally held that when the constitution or the statute require the necessity for making a particular improvement or of taking property for a particular purpose to be passed upon in a particular manner, or by a particular body or tribunal, in such cases it is imperative that the necessity shall be ascertained as required by law. See Lewis Em. Dom. Sec. 598, and numerous cases cited; Spafford v. Brevard County, 92 Fla. 617, 110 So. R. 451. However, when the law says that private property may be taken for public use only when it is necessary for such use, it means a reasonable, not an absolute necessity. Lewis Em. Dom., Sec. 601; 20 C. J. 630.

Again, where the statute conferring the authority, or the statute on the subject of eminent domain, limit the taking to such property as may be *necessary* for the purpose in question, whether any necessity exists for taking particular property for a particular purpose is ultimately a judicial question, upon which the owner is entitled to be heard. Lewis Em. Dom., Sec. 599, 600; 20 C. J., 629, 630; Spafford v. Brevard County, *supra.*. But the grantee of the power is vested with a considerable discretionary power and may determine the location of the land required to be appropriated in order to accomplish the public purpose in view; and such determination will not be interfered with by the

courts if it is made in good faith and is not capricious or wantonly injurious, or in some respect beyond the privilege accorded by the statute. The landowner cannot object merely because some other location might have been made or some other property obtained which would have been suitable for the purpose. 20 C. J. 632; Spafford v. Brevard County, *supra*. A large discretion is necessarily vested in those who are vested with the power, in determining what property, and how much, is necessary. To warrant a denial of the application it should appear that what is sought is clearly an abuse of power on the part of the petitioner. It may be said to be a general rule that, unless a corporation exercising the power of eminent domain acts in bad faith or is guilty of oppression, its discretion in the selection of land will not be interfered with. "If the petitioner is acting in good faith and shows a reasonable necessity for the condemnation, in view of its present and future business, the application should be granted." Lewis' Em. Dom., Sec. 601; 20 C. J. 632-638.

Sections 2281 et seq., Comp. Gen. Laws, 1503 et seq., Rev. Gen. Stats., providing for condemnation proceedings by counties, unlike the general statute on the subject, does not require the petitioner to allege that the property sought to be taken is necessary for the purpose for which it is sought to be taken. But Lewis (Sec. 600) says that though the statute be silent on the subject of necessity, the Constitution impliedly forbids the taking for public use of what is not necessary for such use, and that "the power to take is, in every case, limited to such and so much property as is necessary for the public use in question, and that the owner is entitled, either in the proceedings to condemn or otherwise, to be heard upon this question." A long list of cases is cited in the footnotes to sustain this proposition

See also 10 R. C. L. 184, 185, and note to Hayford v. Bangor, 11 L. R. A. N. S., page 943 et seq.

As to the practice for determining the question of necessity, and other preliminary questions, the learned author (Lewis' Em. Dom., Secs. 589 and 602), says:

"(589) As already observed, the questions which may be litigated upon the application will depend upon the statute. Where the statute permits an application to the court in a particular manner and upon certain conditions, the court necessarily has power to determine whether the conditions exist or have been complied with, and whether the application has been made in proper form. If the manner of determining these questions is pointed out in the statute, that method will control. Otherwise the court may adopt any of the usual modes of determining such questions. The adjudications upon such questions will be as binding as adjudications in any other cases, and the same questions cannot be again litigated between the same parties.

Where the application is to a court, the better practice clearly is that all objections which go to the right of the petitioner to maintain the proceedings should be determined before the assessment of damages is entered upon. Numerous cases are cited in the margin in which this practice is enjoined, commended or followed. In view of the cases cited, the statute expressly provided for such preliminary hearing. In one of the cases, where the statute did not so provide, the court says: 'The statute does not specifically provide what issues may be raised upon the motion to condemn, but it is utterly unreasonable to say that the defendant must be notified when the motion to condemn his land

will be made, and yet when he appears he cannot be heard to show that the plaintiff has no corporate existence, or that it has no authority to condemn the particular property for its use, or that it can only condemn upon certain conditions, which have not been complied with, or under certain circumstances which do not exist. The policy of the law generally is to have all matters arising out of one controvery settled in a single suit, and this ought to be so, especially in a proceeding the effect of which is to take the defendant's land against his will and invest the plaintiff with a fee simple title to it.'

(602) Some statutes require the question of necessity to be determined by the commissioners or jury. Under some statutes the mode of exercising the power of eminent domain is such that there is no opportunity to raise the question, except by a bill to enjoin the condemnation or disturbing the possession of the property, or in some other collateral suit. But when the application is to a court and the statute is silent as to how the question shall be made or determined, it is a preliminary question to be decided by the court before entering upon the assessment of damages. If the owner appears and does not deny the necessity, it should be taken as admitted. If the necessity is denied, the burden is on the company to establish it.''

The author cites numerous cases in support of the text. We consider the views stated by him as sound and our statutes, as we have already observed, strongly imply that all preliminary questions are to be settled by the court before empaneling a jury to try the question of compensation.

While, as hereinabove indicated, some portions of the answer to the petition for condemnation might well have

been .stricken if proper motion directed thereto had been filed, and other portions were subject to motion for compulsory amendment so as to require the facts to be more fully pleaded, yet some of the allegations, in the light of the principles above discussed, were pertinent and presented material issues. The court was therefore in error in striking the answer as a whole. The judgment of this court heretofore rendered affirming the judgment below will be set aside, and the judgment below will be, and is hereby, reversed and the cause remanded for further proceedings in harmony with the views above expressed.

Reversed and remanded.

TERRELL, C. J., AND WHITFIELD, ELLIS, STRUM AND BUFORD, J. J., concur.