JOHN D. ROBERTSON, *Plaintiff in Error,* v. BROOKSVILLE AND INVERNESS RAILWAY, a Corporation Organized and Existing Under the Laws of the State of Florida, *Defendant in Error.*

Division A.

Opinion filed July 19, 1930.

196

*Hampton & Greene,* for Plaintiff in Error;

*George W. Scofield* and *Strauss L. Lloyd,* for Defendant in Error.

Brown, J.—This is a condemnation proceedings brought by the Brooksville and Inverness Railway corporation against John D. Robertson, the plaintiff in error, to condemn an easement in a strip of land 100 feet wide, through Robertson's property, for right of way purposes, and another strip 25 feet wide and several hundred feet long, running out at a right angle from the former strip, for a pipe line to a source of water supply alleged to be necessary to supply water for locomotives and trains. The petitioner alleged that its railroad had been surveyed, located and constructed, and had been leased to the Seaboard Air Line Railway Company, which was operating trains over said property sought to be condemned, and that petitioner had constructed its pipe line, and was securing water from a pit or hole located on said property, as a source of supply for the maintenance of a water tank for the use of engines and trains operated over its said line of road by its lessee.

The defendant filed an answer, to various portions of which numerous "exceptions" were interposed, most of which exceptions were sustained by the court, the remaining portions of the answer being permitted to stay in merely as affecting the amount of compensation to which the defendant might be found to be entitled. While a proceeding of this character is not, strictly speaking, an ordinary law action, neither is it a suit in equity. It is a special statutory proceeding. But the statute practically classifies it with actions at law by providing for appellate review on writ of error and, as we have indicated in a

former case, except in so far as the statute may otherwise require, the general principles of pleading in actions at law might be appropriately assimilated thereto. The statute (Sec. 5084 *et seq.*, Comp. Gen. Laws, provides with some particularity what the petition must allege, and the petition in this case appears to measure up to such requirements, but while it contemplates that a defendant may appear and answer, showing what interest he has in the property, and "to show cause why it should not be taken for the uses and purposes set forth in the petition," the method of testing the sufficiency of the petition and answer are not prescribed. In Wilton v. St. Johns County, 123 So. R. 527, 98 Fla. 26, it was indicated that the sufficiency of either the petition or answer might well be tested by demurrer, motion to strike, or motion for compulsory amendment, as in actions at law; the pleader of course to adopt the particular method of attack appropriate to the end in view. See also 20 C. J. 962. There being no objection interposed in the court below, nor here, to the method adopted of attacking the sufficiency of the answer, which was in the nature of a motion to strike certain portions thereof, we will proceed to consider the material questions thereby raised.

Prior occupation of land by a railroad company without authority of law, even though it be a trespass, will not preclude the company from taking subsequent measures authorized by law to condemn the land for its use. State ex rel. v. J. T. & K. W. R. R. Co., 20 Fla. 616; F. C. & P. R. R. Co. v. Bell, 43 Fla. 359, 31 So. R. 259, Section 5097, Comp. Gen. Laws, and cases cited thereunder. Of course, this assumes that the railroad company had taken possession of land for legitimate railway purposes which it would have had the right to condemn for such purposes in the first instance.

It is well settled that a railroad company which has leased all its property and franchises can exercise the right of eminent domain for the acquisition of property necessary to the operation of the road by its lessee. Elliott on Railroads, 3rd Ed., Section 1202, and cases cited. And in New York it has been held that this principle is applicable even where the lease is for the period of the entire life of the corporation. New York, etc., R. R. Co., Matter of, 99 N. Y. 12, 1 N. E. R. 27.

The principles above set forth sustain the action of the court in holding certain portions of the answer insufficient, but there are certain other parts of the answer to which exceptions were sustained that are not so easily disposed of.

The answer alleges in substance that the petitioner so located its line of railway and pipe line over and across defendant's property in such a way as to go over a valuable phosphate deposit, making it necessary to operate three mines in order to mine such phosphate, whereas only one mine would have otherwise been required, thus damaging the mining possibilities of defendant in a deposit of 100,000 tons of phosphate; that it was not necessary for petitioner to so locate and construct its line as to produce this result; that it could reasonably have been located so as to avoid injuring such phosphate bed; that defendant offered the defendant land for a reasonable compensation if it would refrain from thus impairing his phosphate deposit, but that petitioner proceeded to locate its road and pipe line over said phosphate deposit in the interest of certain other concerns interested in the Seaboard Air Line Railway, in order to destroy the mining possibilities of respondent in said lands, and so as to compel him to sacrifice the same to such interested parties. This paragraph of the answer does not, however, appear to set these matters up as a

ground for denying the petitioner's right to condemn, as it concludes with these words: ''and he charges that this respondent is entitled to the recovery of not less than $100,-000.00 for the crossing of said lands and the taking and destroying of the phosphate bed therein.'' In ruling on the fifteenth exception, directed particularly to this portion of the answer, the seventh paragraph thereof, the court permitted it to remain in the answer, not as a defense to the suit, but only as to its bearing on the question of damages. In view of the concluding language of this paragraph of the answer above quoted, we cannot say that the court was in error. We are not, therefore, called upon to decide what would have been the effect, if these allegations had been pleaded in bar of the petitioner's right to condemn. See Wilton v. St. Johns County, *supra*. In this connection it might be observed, however, that petitioner was only seeking, and was by the verdict and judgment given, an easement for right of way only, not the fee in the land. The defendant therefore retains the title in fee simple, subject only to the easement condemned. We have not the evidence before us, no bill of exceptions being embraced in the record, but the size of the verdict rendered indicates that the jury must have concluded that the condemnation of such an easement as was asked for in the petition would not seriously interfere with the mining possibilities of the alleged phosphate deposit.

The answer, in its first paragraph or section, denies that the Seaboard Air Line is the lessee of the petitioner, but alleges that it is in fact the owner of the railroad, and that the petitioning corporation is a mere sham and pretense, but it does not deny that the petitioner corporation was duly organized and chartered under the laws of the State of Florida and empowered to construct and operate a railroad between Brooksville and Inverness, and as such

vested with the power of eminent domain to that end. Neither does this paragraph deny the petitioner's right to maintain this suit to condemn said lands, and merely concludes by saying: "That because of these matters respondent charges that if petitioner is entitled to condemn the said lands, due consideration should be given to the bed of phosphate contained in the entire N. W. ¼ of the S. W. ¼ of Section 26, Tp. 19 So., R. 19 East, which is utterly destroyed and rendered useless by the construction of said railroad across said lands." Construing the pleading most strongly against the pleader, in pursuance of the general rule to that effect, this section of the answer can hardly be construed to present any clear-cut issue on the question of the petitioner's right to maintain this action.

The only definite issue presented by the answer as to the right or power of the petitioner to condemn is contained in the third section of the answer, relating to the right of way for the pipe line. This paragraph specifically denies that petitioner has authority under the laws of Florida, or by any public grant, to condemn a right of way for a pipe line to said pit, and alleges that such is not within the purview of the law authorizing condemnation. Other paragraphs question the rightfulness or necessity for the exercise of the power in this particular, which we will consider later.

Subsection 4 of Section 6316, Comp. Gen. Laws, empowers a railroad company to lay out and construct its road, and for the purpose of cuttings and embankments, and in order to obtain "gravel and other material, to take as much land as may be necessary for the proper construction, *operation* and security" of its road, "making compensation therefor as provided for land taken for the use of the company." (Italics supplied.) And Subsection

8 of the same section of Comp. Gen. Laws grants such a company power, "To erect and maintain all convenient buildings, wharves, docks, stations, fixtures and machinery for the accommodation and use of their passengers and freight business."

It is quite generally held that land may be appropriated by a railroad company for any purpose essential and indispensable to the construction, maintenance and operation of the road. 20 C. J. 565, and cases cited.

In Section 1205 of Elliott on Railroads, 3rd Ed., it is said that a railroad corporation may "take springs near its road for a supply of water for its engines, upon making compensation therefor when it cannot be otherwise obtained," citing a number of cases. See also 20 C. J. 566, where it is said that a railroad company may condemn lands when necessary for the construction of water stations, tanks or reservoirs, and mains or pipe lines to procure necessary water supply."

Of course a railroad corporation may not exercise the power of eminent domain to take *any* land or material it may desire for the economical conduct of its business. It has two functions, one public, the other private. It can only condemn land in its public capacity for purposes essential to the proper exercise of its franchise. It can take land which is to be used by the public, and it may also take land in certain cases where the public does not use the land itself, and yet the public necessity is so direct and obvious as to imply a public use. Such purposes, for example, are the taking of land for engine houses, car houses, and repair shops, without which the public could not adequately use the road itself. 10 R. C. L. 44-45. And this principle has been, and we think correctly, extended to the taking of land for the obtaining of a necessary water supply for its engines, where it is not practicable to obtain

such supply otherwise. It is common knowledge that locomotives cannot be operated without water. Neither can they be operated without fuel; yet, as to obtaining fuel it has been held that a railroad company cannot under ordinary conditions be allowed to condemn a coal mine so as to secure fuel for its engines at the least expense. (20 R. C. L. 45.) Ordinarily the obtaining of supplies appertains to the private business of the company, and even when it comes to the matter of condemning land in order to obtain such essental supplies as water and fuel, the existence of a genuine necessity (that is, as being necessary to the proper performance of the public duties imposed by the company's franchise) is the foundation of the right to take. 10 R. C. L. 159, Lewis Em. Dom. Sec. 303. Mere convenience or economic advantage would not avail. In this connection, it might be observed that coal and oil may be bought in the open market and easily transported, whereas water must be made available in tanks for locomotives at certain intervals along the line of the road, where it generally cannot be had except by sinking wells of tapping by pipe line some nearby source of supply.

We are of the opinion, therefore, that a railroad company in this State may, when the genuine necessity exists, condemn privately owned real estate near its right of way in order to thereby obtain a water supply for its water tank or station for the use of its locomotives and trains, or those of its lessee, whether the source of supply will be a well, or a spring, or, as in this case, an excavation made in past mining operations into which water has percolated; and that it may also condemn a strip of land for a pipe line to such source of supply.

Percolating waters are generally regarded as part of the lands in which they may be found, and the title to them

while there is not affected otherwise than by affecting the title to the land. 27 R. C. L. 1285.

The petition alleges the necessity for the right of way for the pipe line to the pit or hole—the source of supply—in order to obtain such necessary water—and alleges that such source of supply "is located on a portion of said lands," that is, presumably, the lands sought to be condemned, though this is denied by the owner. The answer does not expressly deny the necessity for the use of the water, nor the necessity for a right of way for a pipe line thereto in order to obtain such use, but it alleges in substance that the petitioner is not seeking to condemn the source of supply or the land on which it is located, both of which are the property of the defendant; that the railway company is merely seeking to condemn a right of way for a pipe line up to the pit containing the water, in order that it may continue to do what, over defendant's protest, it has already been doing, that is, to take water from defendant's pit on defendant's land without lawful right and over defendant's protest.

As well stated in plaintiff in error's brief: "The petition and answer in this case present the somewhat extraordinary situation of a railroad company under the guise of the power of eminent domain seeking to gain access to a supply of material which it uses in operating its railroad for the obvious and declared purpose of taking and appropriating that material, although it plainly belongs to another party, the respondent in this case. There is no claim by the petitioner that it owns this material, neither is there any attempt to condemn the water, nor even a suggestion of a willingness to pay for it. * * * Even if the right of way should be condemned, its effect would be a nullity, as no court of equity would hesitate to enjoin the taking of such material by the railroad."

It has been said that no one has a property right to perpetrate a wrong. Nor can the power of eminent domain be perverted to such a purpose. Before asking the court to condemn a right of way for a pipe line to the waterhole, the railway company should have first secured by purchase or contract the right to take water therefrom, or should have purchased the land on which the water is located, or, failing in this, it should have acquired the same by condemnation, either in a previous action, or by condemnation thereof in this same proceeding by which it seeks the right to reach it with its pipe line. On the case as made by the answer, the court is asked to allow the exercise of the vast power of eminent domain to give the railway company access to water which it has no present or prospective right to use, and which it cannot use without committing an unlawful trespass. As we understand them, the authorities do not countenance any such exercise of the power. It is admitted that condemnation proceedings can be brought to acquire property necessary to the construction or operation of a railroad which it has previously taken possession of without right, but such proceedings cannot be used to enable the petitioner to accomplish an unlawful act, or to continue the perpetration of a legal wrong. The courts, in order to grant a present right, may sometimes overlook a past trespass, but they will not lend their aid to the future commission of one. Thus, in spite of the past trespass alleged in the answer, the petitioner might be allowed, upon proper showing, to condemn the source of water supply which it has been wrongfully using, according to the allegations of the answer, because thereby the owner would be accorded ''just compensation'' and the public service corporation be given material necessary to the successful performance of its public functions. But under the allegations made by the answer, there is here no effort to

condemn the source of supply which is being wrongfully used. The effort is merely to secure by condemnation access thereto, that such wrongful use may be continued. It is argued in reply that defendant has no right to object, for, if he is right in his allegation as to the facts, he can enjoin the taking of the water even though the right of way up to it be condemned to petitioner's use, and hence the defendant would suffer no injury. But neither will the courts lend their aid to the accomplishment of a futility. Why allow the exercise of the power of eminent domain to condemn property for a use which the defendant can immediately enjoin? And in such a case, what becomes of that "genuine necessity" upon which the right to exercise the power of eminent domain in such cases rests? See Wilton v. St. Johns County, 123 So. R. 527, 535; 98 Fla. 26, where it is said:

> "Again, where the statute conferring the authority, or the statute on the subject of eminent domain, limit the taking to such property as may be *necessary* for the purpose in question, whether any necessity exists for taking particular property for a particular purpose is ultimately a judicial question, upon which the owner is entitled to be heard. Lewis, Em. Dom., pages 599, 600; 20 C. J. 629, 630; Spafford v. Brevard County, *supra*. But the grantee of the power is vested with a considerable discretionary power, and may determine the location of the land required to be appropriated in order to accomplish the public purpose in view; and such determination will not be interferred with by the courts if it is made in good faith and is not capricious or wantonly injurious, or in some respect beyond the privilege accorded by the statute. The landowner cannot object merely because some

other location might have been made or some other property obtained which would have been suitable for the purpose. 20 C. J. 632, Spafford v. Brevard County, *supra.* A large discretion is necessarily vested in those who are vested with the power, in determining what property, and how much, is necessary. To warrant a denial of the application, it should appear that what is sought is clearly an abuse of power on the part of the petitioner. It may be said to be a general rule that, unless a corporation exercising the power of eminent domain acts in bad faith or is guilty of oppression, its discretion in the selection of land will not be interfered with.

" 'If the petitioner is acting in good faith and shows a reasonable necessity for the condemnation, in view of its present and future business, the application should be granted.' Lewis' Em. Dom. 601; 20 C. J. 632-638.''

We must conclude, therefore, that the exceptions to those portions of the answer setting up the defense which we have just been discussing were erroneously sustained. As the verdict and judgment granting the condemnation and fixing the compensation related to the entire property sought to be condemned, the right of way for the railroad line and for the pipe line together, ascertaining a named sum as compensation for the whole, the judgment must be reversed.

Reversed.

TERRELL, C. J., AND ELLIS, J., concur.

WHITFIELD, P. J., AND STRUM AND BUFORD, J. J., concur in the opinion and judgment.