176 So.2d 111 (1965)
GEORGIA SOUTHERN AND FLORIDA RAILWAY COMPANY, Petitioner,
v.
STATE ROAD DEPARTMENT of Florida, an Agency of the State of Florida, and Clay County, a political subdivision of the State of Florida, Respondents.
No. G-162.
District Court of Appeal of Florida. First District.
June 10, 1965.
Mathews, Osborne & Ehrlich, Jacksonville, for petitioner.
Robert D. Canada, Tallahassee, for respondents.
RAWLS, Judge.
Georgia Southern and Florida Railway Company has filed its petition for writ of certiorari to review an order of taking in this eminent domain suit for the purpose of questioning the authority of the State Road Department to condemn petitioner's property.
We entertain this petition for certiorari in accordance with the decision of the District Court of Appeal, Second District, in City of Dania v. Central & Southern Florida Flood Control District,[1] for it clearly appears that if the Road Department is without authority to condemn the *112 property in question, there is no full, adequate and complete remedy by appeal after final judgment available to the petitioner.
The sole question for consideration here is: In the absence of authority conferred expressly or by necessary implication, can the State Road Department, an agency of the State, and Clay County, a political subdivision of the State, take two longitudinal portions of an existing railroad right of way which is now, and has been for many years, devoted to a public use?
On its main line from Valdosta to Palatka the Georgia Southern and Florida Railway Company has had for more than fifty years a 100 foot right of way which parallels State Road 100 for some distance near Keystone Heights with a common boundary line for the two rights of way. The Railway, a common carrier in interstate commerce, has its track in the center of its right of way. The Road Department and Clay County propose to widen State Road 100 and to condemn two strips of the Railway right of way approximately 17 feet wide and totaling one and three-quarter miles long for a drainage easement for the widened road.
Petitioner contends that the general power of eminent domain granted to the counties and to railroads extends to condemning crossings over its right of way but does not extend to longitudinal portions; that counties and the Road Department have been granted no special powers to take railroad rights of way longitudinally whereas railroads under § 360.01(5), Florida Statutes, F.S.A., do have special powers to change the course or direction of roads; and that the Road Department in building roads is not the sovereign performing sovereign purposes so as to occupy the status of a superior rank in respect to public necessity.
Respondent's position is twofold. First, it clothes itself with the sovereignty of the state and then assigns unto itself a priority superior to that of the Railway and concludes that the character of the "res", i.e. the Railroad, has no inhibiting influence upon its exercise of the power of eminent domain. In furtherance of this theory, it points out that its grant from the sovereign is to condemn all property except state or federal,[2] and since railroads are not among the specific exceptions, the property of such private corporations even though devoted to a public use, is subject to condemnation by the holder of a superior grant. Secondly, with commendable candor, respondent recognizes that a persuasive argument can be made in support of the theory that respective grants of power of eminent domain by the sovereign are equal in priority, and where such premise is recognized, the "compatible use" doctrine comes into play. Respondent then asserts that even if we should reject its theory of priority, that their right to proceed in eminent domain in the case sub judice falls within the compatible use theory.
The general rule is that property devoted to a public use cannot be taken and appropriated to another and different public use unless the legislative intent to so take has been manifested in express terms or by necessary implication. There are two well established exceptions to the rule. One exists when the proposed use is of superior rank in respect of public necessity, and the other arises when the taking will not materially impair or interfere with or is not inconsistent with the use already existing, and is not detrimental to the public.
We are compelled to follow the principles recognized in City of Dania v. Central & Southern Florida Flood Control District.[3] There it was held that the fact that land owned by the City and used for a garbage dump did not exempt it from condemnation by a flood control district for the purpose of widening an existing drainage canal already *113 on the property if same would not materially impair the public use to which it is now subjected by the City.
In the instant cause, the testimony of the petitioner's witnesses shows that the petitioner is presently using the parcels in question for track side drainage ditches and for maintenance of its own ditches and tracks. There was evidence that in some places the 33 foot right of way remaining would not be adequate for the operation of large heavy trackside equipment which is the most efficient type of maintenance, but the equipment could be used on the other side of the track although it would present some problems. Furthermore, the taking would decrease the Railway's supply of borrow pit soil used to reclaim or to flush fills for future betterment of the track roadbeds, but this loss will, of course, be compensable and is immaterial to this decision. The essence of this testimony was that the proposed use would not interfere with the Railway's present drainage ditches, that the interference with the maintenance of the tract would occur only in fill sections and that the proposed use would be beneficial to the Railway in those places where the two drainage ditches were consolidated and where certain berms were eliminated.
It is our conclusion that the compatible use theory is applicable to the facts appearing in this record and that Abraham Lincoln's argument in "The Effie Afton Case" that "one man has as good a right to cross a river as another has to sail up or down it" is analogous to the situation here presented. The trial judge apparently found that the taking would not materially impair or interfere with the public use [railroad] to which the parcels are now being devoted, and so the general powers of eminent domain are adequate for the purposes of this suit. There is ample substantial evidence to support this conclusion. Having reached the decision that the proposed use is consistent with the prior use and would not materially impair the prior use and thus falls within one exception to the general rule, we need not decide which use is of superior rank.
Certiorari denied.
WIGGINTON, Acting C.J., and CARROLL, DONALD K., J., concur.
NOTES
[1] City of Dania v. Central & Southern Florida Flood Control District, 134 So.2d 848 (Fla. App.2d 1961).
[2] Sections 337.27 and 127.01 (1), Florida Statutes, F.S.A.
[3] City of Dania v. Central & Southern Florida Flood Control District, supra.