286 So.2d 247 (1973)
CITY OF MIAMI, a Municipal Corporation of the State of Florida, Appellant,
v.
FLORIDA EAST COAST RAILWAY COMPANY, a Florida Corporation, et al., Appellees.
No. 73-210.
District Court of Appeal of Florida, Third District.
November 27, 1973.
Rehearing Denied December 19, 1973.
*248 John S. Lloyd, City Atty., and R. Harris Turner, Asst. City Atty., Howard Hadley, Winter Park, Podhurst, Orseck & Parks, Miami, for appellant.
Shutts & Bowen and William P. Simmons, Jr., Miami, for appellees.
Before PEARSON, CARROLL and HENDRY, JJ.
PER CURIAM.
The City of Miami brought to the circuit court a petition in eminent domain. It sought to condemn property of the Florida East Coast Railway Company. The land involved is approximately thirty-two acres located on Biscayne Bay in downtown Miami, the western boundary being Biscayne Boulevard, lying between N.E. 6th and N.E. 9th streets and extending eastward to the harbor line of the Bay. The City wants to condemn the land for park purposes. The Railway Company uses all of the land except the bay bottom in connection with its business, and some of the land in connection with transferring freight to marine carriers. The City urges that the Railway ought to use the newer Dodge Island seaport which is operated by the county. The Railway Company urges that it has a right to continue to use the land for its business purposes.[1]
An issue concerning the right of the City to acquire the property by eminent domain was raised by an affirmative defense in the answer of the Railway Company. The answer stated that the City is not authorized to condemn the property because it is being devoted to a public use. The issue came on to be heard upon the Railway Company's motion for summary judgment. The trial judge considered the issue of the City's right to condemn as a "disputed matter" to be settled "in limine" at a pretrial hearing pursuant to Fla. Stat. § 73.061(1), F.S.A. After taking testimony, the judge entered an order entitled "Order on Defendant's Motion for Summary Judgment". The order found that a part of the land was being used by the Railway Company for private business purposes, and the court held that such land could be acquired by the City by eminent domain. The order further found that a part of the land was *249 being used by a lessee of the Railway Company, but that it was used by the lessee for a public purpose and that this portion of the land could not be acquired by the City. The order further found that the remainder of the property was also being used by the Railway Company for a public purpose and therefore could not be acquired by the City.
This appeal is by the City of Miami from the order on pretrial hearing. There is no cross assignment of error offered by the Railway Company, and therefore no issue upon the trial judge's finding that a portion of the property is properly subject to the City's suit. In his order, the trial judge has provided a clear statement of what occurred in the proceedings before him:
* * * * * *
"The evidence presented by the petitioner consisted of the testimony of two expert witnesses, the director of the City's Planning Department and one of his assistants, who testified that the property sought to be condemned was needed for public recreational park uses. The petitioner did not offer any evidence directly bearing on the extent of the present uses of the property by the railroad or its prior uses.
"The defendant railroad presented extensive eivdence [sic] as to the present and prior uses of the property. It appears that for several years most of the property fronting on Biscayne Boulevard has been leased for various commercial uses not directly connected with the operation of the railroad. There are four such parcels under lease as shown on Exhibit `C' of the defendant railroad: Parcel #1 in the southwest corner of the property leased to Standard Oil Co.; Parcel #3 in the center of the property leased to Holiday Inns of America, Inc.; Parcel #4, near the north end of the property leased to American Oil Co.; and a parcel in the northwest corner of the property designated on the exhibit as Parcels 5 and 6, fronting 125' along Biscayne Boulevard and extending eastward 100'.
"Another portion of the property designated as Parcel #2 on Exhibit `C' has been under lease since January 1, 1966 to TMT Trailer Ferry, Inc., and used for marine terminal purposes in its operations as a common carrier of freight traffic on barges between Miami and Puerto Rico.
"The remainder of the property has been used and occupied for many years by the railroad as a port facility. Two rail lines of the railroad, designated as team tracks, serve this part of the property and parallel the bulkhead where vessels dock so that property can be conveniently transferred between ships and railroad cars.
"The evidence presented by the railroad showed extensive use of these port facilities in recent years for the dockage of vessels and the transfer of cargo moving in interstate and foreign commerce between ships and barges on the one hand and, on the other hand, the railroad and common carrier trucklines that move the cargo to and from the port. The port facilities operated by the railroad and by TMT Trailer Ferry, Inc., are public facilities, so designated in various tariffs governing their use. The railroad makes continuous use of these public port facilities through its rail lines serving them and also through its wholly owned common carrier truck line subsidiary, the Florida East Coast Highway Dispatch Company. The use of the port facilities by the railroad and its subsidiary is an integral part of the operation of the railroad."
* * * * * *
The City has presented a point on appeal urging that the trial court committed error in the procedure employed. Furthermore, it claims that a summary judgment should not have been entered because there are genuine issues of material fact. *250 The point does not present reversible error, although the terminology used in the order appealed may have been inappropriate. The trial judge properly proceeded to determine the issue of the City's right to eminent domain at a pretrial hearing. The issue was one to be determined by the court without the aid of a jury. See 27 Am.Jur.2d Eminent Domain § 401. Cf. Demeter Land Co. v. Florida Public Service Co., 99 Fla. 954, 128 So. 402 (1930); Wilton v. St. Johns County, 98 Fla. 26, 123 So. 527 (1929); 1.67 Acres of Land v. State ex rel. Allen, 225 A.2d 763 (Del. 1967). The City did not object to the procedure used, and was afforded a full opportunity to present any and all evidence that it could have offered at trial.
The City attacks the court's holding in two ways. First, the City claims that because public necessity is involved, its proposed use of the property is superior in rank to the Railway Company's use. Second, the City urges that all of the subject property is used by the Railway Company for private purposes.
The City contends that it has a superior right of eminent domain to the property sought to be condemned because of the great and urgent need of cities for park and recreational areas. See City of Dania v. Central and Southern Florida Flood Control District, Fla.App. 1961, 134 So.2d 848. Conversely, the Railway has claimed a superior right to the property because of certain statutes giving it condemnation rights. See Fla. Stat. §§ 360.01(4), 360.02, and 361.01, F.S.A. We know of no present statute or court decision which gives to either of the parties a higher right of eminent domain. We respectfully decline the temptation to hold that because of changed circumstances a new rule is required. We leave that decision, if and when necessary, to the legislature or a higher court.
The City's second argument recognizes the prior use doctrine, i.e., the proposition that property already devoted to a public use may not be taken for another public use in the absence of express legislative authority. See City of Dania v. Central and Southern Florida Flood Control District, supra. The trial judge applied the doctrine as follows:
* * * * * *
"The defendant railroad, as a public service corporation, has certain special powers under the Florida Statutes including those enumerated in Chapter 360. Among these special powers is that of eminent domain and the specific power under Section 360.02, Florida Statutes, to condemn property for marine terminal facilities and public uses in connection therewith such as those to which the major portions of the property involved herein are being used.
"The petitioner herein, City of Miami, has only general powers of eminent domain and its such powers are not superior to those of the defendant railroad.
* * * * * *
"The petitioner is not authorized or permitted by law to condemn those portions of the property involved which are being used for the public purposes stated above. The record shows that there is no genuine issue as to any material fact with respect to the issue involving the right of the petitioner to condemn such property, and the defendant railroad is entitled, as a matter of law, to a judgment dismissing such property from this suit."
* * * * * *
The Railway has relied heavily on Dania, supra, to support its argument that the application of the prior use doctrine requires a holding that its "public use" of the property bars the City from exercising its power of eminent domain. Therefore, the Railway contends that any use of the property which has a public aspect, such as a fellow common carrier using the property for freight shipping, bars the City from exercising its power of eminent domain. *251 Initially, the argument is not acceptable because the Dania case involved an application of the prior use doctrine between two "public bodies", and clearly the Railway is not a "public body" but is a "franchised public use company". State Department of Transportation v. Florida East Coast Railway Company, Fla.App. 1972, 262 So.2d 480, 484.[2] Secondly, Dania is not controlling in the case at bar because, unlike the legal situation presented in Dania, the City's power to maintain eminent domain proceedings as a public body is not in dispute. Rather, the question concerns the amount of the Railway's land that can be exempt from the City's suit.
The Railway relies upon a discussion of the prior use doctrine as it applies to railroad property from 26 Am.Jur.2d Eminent Domain § 99, at 756:
* * * * * *
"In the absence of statutory authority, express or necessarily implied, railroad property may not be taken for another use which will interfere with the operation of the right of way. The use by a railroad company which protects its lands from condemnation under general authority, except for crossings, is not restricted to the operation of its main line, but extends to all the ground occupied by appliances necessary for the successful operation of the road, such as its freight yard, sidetracks, and spur tracks." [Emphasis supplied]
We think that a rational basis for the prior use doctrine lies in the fact that if one condemning authority may acquire land used for a public purpose by another condemning authority, then the latter would logically be free to reacquire the same property. See Township of Weehawken v. Erie Railroad Company, 20 N.J. 572, 120 A.2d 593, 596 (1956), quoted with approval in Dania, supra, 134 So.2d 848, at 852. This observation illuminates the criterion that, in order to forestall condemnation, a railroad's use must not only be a public use but must also be a use "necessary for the successful operation of the road" as stated in the quotation above. Clearly, if the shoe were on the other foot, and the Railway were the condemning authority, it would have to show that the property sought to be acquired was "indispensable to the construction, maintenance, and operation of the road". Robertson v. Brooksville & I. Ry., 100 Fla. 195, 129 So. 582, 585 (1930). Cf. State Department of Transportation v. Florida East Coast Railway Company, supra. Based upon this reasoning, and considering the various portions of property classified by the trial court, we reach the conclusion that the trial court applied an incorrect criterion in its determination that the City may not take certain portions of the property. We must therefore consider these various portions as classified by the trial court in determining further proceedings to be had in the case.
It will be recalled that the trial judge's order divided the property as follows: (1) property leased to parties other than TMT Trailer Ferry, Inc.; (2) property leased to TMT Trailer Ferry, Inc.; and (3) the remainder of the property involved which constitutes all of the land which is not under lease. To this division of the property we add for the purpose of convenience a fourth division consisting of the submerged portion of the property which the Railway now proposes to fill in.
In reference to the first division of the property, we believe that the trial *252 judge has correctly determined that the property which is leased to parties other than TMT Trailer Ferry, Inc., is not being used for public purposes. Therefore, the order appealed is affirmed as to this portion of the property.
In considering the portion of the property leased to TMT Trailer Ferry, Inc., the second classification above, the trial judge reached the conclusion that it is not subject to the City's suit because TMT Trailer Ferry, Inc. is serviced by the Railway and is itself a common carrier. We hold that this conclusion cannot be supported under the criterion that a railroad may prevent condemnation of its property where the property sought to be condemned in necessary for the successful operation of the railroad. The evidence before us, viewed in the light most favorable to a decision for the Railway, would not support such a holding. Nevertheless, we feel that the trial judge should take such additional evidence as is offered to him by the parties upon remand, and that based upon all of the evidence before him should determine whether the property which is leased to TMT Trailer Ferry, Inc. is necessary for the successful operation of the Railway.
Turning to the last of the trial court's classifications, on remand it will reconsider its decision that the remainder of the property involved other than the bay bottom is not subject to the City's power of eminent domain. If the trial court determines that the tracks and certain warehouse space are necessary for the operation of the railroad, then only so much of the property as is necessary for that operation shall be reserved for railroad purposes.
In considering the court's ruling that the City may not acquire the bay bottom or submerged portion of the property which the Railway now proposes to fill in, we hold that the ruling is clearly erroneous. It is apparent that the Railway is not now using nor has it ever used the bay bottom as a part of its "port" operation. The Railway has used a part of the water over the bay bottom as a means of ingress and egress to dockage and for dockage. Any portion of the submerged land which the Railway now intends to fill in is demonstrated to be no longer necessary for the "port" operation. The holding that the submerged land which is not necessary for the operation of the railroad is excluded from the condemnation suit, is without any support in the record. It is therefore reversed. Upon remand, the trial judge shall hear such evidence as shall be offered defining that portion of the bay bottom which the Railway does not intend to fill in and which is now necessary for the present operation of the Railway. The portion reasonably necessary may be excluded from the condemnation suit. No other portion of the bay bottom may be rightly excluded.
The order appealed is affirmed in part and reversed in part and the cause is remanded for further proceedings as outlined in this opinion.
Affirmed in part, reversed in part, and remanded.
HENDRY, Judge (concurring in part and dissenting in part.)
I agree with the majority in affirming that portion of the trial court's order finding portions of the property in question to be in use for private business purposes and therefore subject to eminent domain by the city. This is undisputed by the parties.
However, I must dissent from that part of the majority opinion reversing the trial court and remanding to consider the issue of whether or not the railroad property sought to be condemned is necessary for the successful operation of the railroad. In my view, the trial judge has already considered this issue, and in essence we are directing him to reconsider the same factual issues which the parties have already once presented.
*253 The trial court's order on appellee's motion for summary judgment, which essentially is a final judgment on the issue of the city's right to condemn and not a summary judgment at all, followed testimony of six witnesses containing a transcript two hundred and twenty-four pages in length.
The court heard the director of the city's planning department and one of his assistants, as expert witnesses for the city, and he heard four witnesses on behalf of the railroad. Significantly, in the last sentence of that portion of his order which the majority opinion quotes, pertaining to the evidence presented, the trial judge states, "The use of the port facilities by the railroad and its subsidiary is an integral part of the operation of the railroad."
As I construe this language, the trial court necessarily was considering the question of whether this property was "necessary for the successful operation of the road."
I might better understand the need for remanding this case for further evidence if we were requiring the trial court to consider the question of whether or not the city has superior necessity for the railroad property. However, as I think the majority correctly points out, we have been unable to locate any statute or case granting to either the city or the railroad the superior right to eminent domain where there exists a prior public use of property. In this situation, it appears that the following rule applies:
"The rule is settled that under a general law permitting cities to care for their internal affairs, a municipality may condemn railroad property for a municipal purpose, provided the use for which the railroad property is employed is not thereby materially injured or destroyed, and provided the railroad use and the municipal purpose for which the property is condemned may coexist without impairment of the former. But where the uses cannot coexist, or where the first use is materially impaired or destroyed, it is unquestionably the rule that the right of the municipality or other public body to condemn will be denied unless it is expressly, or by necessary implication, given by the legislature." 26 Am.Jur.2d Eminent Domain § 99, and cases cited therein.
I think that by remanding this cause for reconsideration of the narrow issue of whether the railroad property is necessary for the successful operation of the road we are in effect granting the parties a second day in court. I would affirm the trial court in all respects.
NOTES
[1] The area involved was once the actual terminus of the Florida East Coast Railway in Miami. The City's first railroad station was located west of the property. The Railway Company built the dock and trackage which, at one time, was utilized by the Peninsular & Occidental Steamship Company. See Peninsular & Occidental Steamship Company, 37 I.C.C. 432 (1915).
[2] * * * *
"For one thing, the railway company is not a `public body' in the sense of an agency or political subdivision of the state, its status being that of a franchised public use company. Assuming, without so deciding, that property owned by it which was essential to its operations, could not be taken from it by the state by virtue of the road dedication statute or otherwise, the Conservancy District decision would not apply here since the property involved in this case is recognized by the railway company as being subject to be taken by the state for highway purposes and is not essential to its operation thereof."
* * * * *