321 So.2d 545 (1975)
FLORIDA EAST COAST RAILWAY COMPANY, a Florida Corporation, Petitioner,
v.
CITY OF MIAMI, a Municipal Corporation of the State of Florida, Respondent.
No. 44874.
Supreme Court of Florida.
July 24, 1975.
Rehearing Denied November 18, 1975.
*546 William P. Simmons, Jr. and Eric B. Meyers of Shutts & Bowen, Miami, for petitioner.
John S. Lloyd, City Atty. and Robert Orseck of Podhurst, Orseck & Park, Miami, for respondent.
Robert L. Shevin, Atty. Gen. and Jerry E. Oxner, Asst. Atty. Gen., for amicus curiae.
OVERTON, Justice.
This cause is before us upon petition for certiorari to review a decision of the Third District Court of Appeal, reported at 286 So.2d 247. Conflict is asserted with Georgia Southern and Florida Railway Company v. State Road Department, 176 So.2d 111 (Fla.App. 1st 1965), and City of Dania v. Central and Southern Florida Flood Control District, 134 So.2d 848 (Fla.App.2d 1961). We agree there is conflict as herein expressed, and we have jurisdiction under Article V, Section 3(b)(3), Florida Constitution, West's F.S.A.
This action commenced as a condemnation by the City of Miami for park purposes against certain waterfront lands owned by the petitioner herein, Florida East Coast Railway Company. The trial court, after an extensive hearing on the issue of the City's right to acquire certain railroad property by eminent domain, entered the following order:
"The evidence presented by the [City of Miami] consisted of the testimony of two expert witnesses, the director of the City's Planning Department and one of his assistants, who testified that the property sought to be condemned was needed for public recreational park uses. The [City] did not offer any evidence directly bearing on the extent of the present uses of the property by the railroad or its prior uses.
"The defendant railroad presented extensive evidence as to the present and prior uses of the property. It appears that for several years most of the property fronting on Biscayne Boulevard has been leased for various commercial uses not directly connected with the operation of the railroad. There are four such parcels under lease as shown on Exhibit `C' of the defendant railroad: Parcel #1 in the southwest corner of the property leased to Standard Oil Co.; Parcel #3 in the center of the property leased to Holiday Inns of America, Inc.; Parcel #4, near the north end of the property leased to American Oil Co.; and a parcel in the northwest corner of the property designated on the exhibit as Parcels 5 and 6, fronting 125' along Biscayne Boulevard and extending eastward 100'.
"Another portion of the property designated as Parcel #2 on Exhibit `C' has been under lease since January 1, 1966 to TMT Trailer Ferry, Inc., and used for marine terminal purposes in its operations as a common carrier of freight traffic on barges between Miami and Puerto Rico.

*547 "The remainder of the property has been used and occupied for many years by the railroad as a port facility. Two rail lines of the railroad, designated as team tracks, serve this part of the property and parallel the bulkhead where vessels dock so that property can be conveniently transferred between ships and railroad cars.
"The evidence presented by the railroad showed extensive use of these port facilities in recent years for the dockage of vessels and the transfer of cargo moving in interstate and foreign commerce between ships and barges on the one hand and, on the other hand, the railroad and common carrier trucklines that move the cargo to and from the port. The port facilities operated by the railroad and by TMT Trailer Ferry, Inc., are public facilities, so designated in various tariffs governing their use. The railroad makes continuous use of these public port facilities through its rail lines serving them and also through its wholly owned common carrier truck line subsidiary, the Florida East Coast Highway Dispatch Company. The use of the port facilities by the railroad and its subsidiary is an integral part of the operation of the railroad."
The railroad accepted the trial court's order allowing condemnation of part of the subject property, but the City appealed. The Third District Court of Appeal reversed that portion of the trial court's order denying the City the right to take the property leased to TMT Trailer Ferry, Inc., and certain submerged bay bottom-lands. The cause was ordered remanded to the trial judge to determine whether these properties "[are] necessary for the successful operation of the Railway." From this ruling the railroad filed the present petition in this Court.
The issues in this case concern the applicability of the prior public use doctrine to the TMT Trailer Ferry, Inc., property and to submerged bay bottomlands. Generally, property held by an authority that has the power of condemnation cannot be taken by another authority with the same power of condemnation absent specific legislation. This is known as the prior public use doctrine. 1 Nichols on Eminent Domain 2-57, § 2.2. Two prior District Court cases considered this doctrine. In Georgia Southern and Florida Railway Company v. State Road Department, supra, the Road Department sought to widen a state road and to condemn parts of a railroad right-of-way for a drainage easement. The First District cited the prior public use doctrine, stating:
"The general rule is that property devoted to a public use cannot be taken and appropriated to another and different public use unless the legislative intent to so take has been manifested in express terms or by necessary implication... ."
176 So.2d at 112.
The court held, however, that the subject property could be taken under an exception to the public use doctrine since the proposed use was consistent with and would not materially impair the prior public use.
In City of Dania v. Central and Southern Florida Flood Control District, supra, the Flood Control District sought to condemn land owned by the City of Dania. The Second District Court of Appeal cited with approval the following quotations from Township of Weehawken v. Erie Railroad Company, 20 N.J. 572, 120 A.2d 593, 596 (1956):
"`The doctrine of prior use is well recognized. * * * Simply stated, the rule denies exercise of the power of condemnation where the proposed use will destroy an existing public use or prevent a proposed public use unless the authority to do so has been expressly given by the Legislature or must necessarily be implied * * *.

*548 "`* * * The rule stems from the recognition that municipal and many private corporations possess general powers of condemnation delegated by the Legislature. If one such body may acquire land used or held for a public purpose by another corporation under a general power of condemnation, the latter would logically be free to re-acquire the same property. * * *'"
In the instant case, the Third District Court of Appeal distinguished the City of Dania case, holding that it involved two public bodies, while this cause involves a public body and a franchised public use company. We do not agree with the distinguishing characteristic as expressed by the District Court. It is not controlling.
It is unrefuted that the City could properly condemn land owned by the railroad and used as filling station or motel property; but it could not properly condemn the Dodge Island tracts and terminal because the prior public use doctrine would apply. Those lands are not in dispute. The first disputed issue is whether the prior public use doctrine is applicable to the land leased by the railroad to TMT Trailer Ferry, Inc., and used for marine terminal purposes in a limited type of freight operation. TMT Trailer Ferry, Inc., is a lessee of the petitioner. It operates a terminal on a portion of the land for the docking of barges on which truck-trailers are transported to and from San Juan, Puerto Rico. The truck trailers contain general cargo and sometimes carry automobiles for export. They arrive daily by truck-tractor and are stored on the land pending loading and unloading for weekly sailings. Various truck common carriers, including a wholly-owned truck common carrier of the petitioner railroad, deliver and receive the trailers at the terminal, where they are rolled on or off the barges. The lease has a thirty-day termination clause.
The second issue is whether the prior public use doctrine is applicable to certain bay bottomland, which the petitioner desires to fill to expand its port facilities.
Upon these facts, the Third District held:
"... [I]n order to forestall condemnation, a railroad's use must not only be a public use but must also be a use `necessary for the successful operation of the road'... ."
In so holding, the court quoted with approval a discussion of the prior use doctrine in 26 Am.Jur.2d 756, Eminent Domain, § 99:
"`In the absence of statutory authority, express or necessarily implied, railroad property may not be taken for another use which will interfere with the operation of the right of way. The use by a railroad company which protects its lands from condemnation under general authority, except for crossings, is not restricted to the operation of its main line, but extends to all the ground occupied by appliances necessary for the successful operation of the road, such as its freight yard, sidetracks, and spur tracks.'
[Emphasis supplied]"
286 So.2d at 251.
This is an additional criterion and limitation for railroads upon the prior use doctrine as expressed in Georgia Southern and Florida Railway Company v. State Road Department, supra, and City of Dania v. Central and Southern Florida Flood Control District, supra, and, therefore, there is conflict. We approve the additional criterion as expressed in the Third District's opinion.
We are concerned, however, that this concept of prior public use may be misapplied without a clarification of the terms "necessary" and "successful." We understand the term "necessary" in this context to mean utilitarian in furtherance of the public use for which a public franchise or *549 certificate of public convenience and necessity has been granted. It does not mean "indispensable" to the railroad operation.
We further understand the term "successful" to mean a use correlative with the railroad's public use, as opposed to a financially successful use. The application of a "financially successful" use exception to the doctrine could have results not intended. For example, under the facts of this case the revenue derived from the leases to the Holiday Inn, Standard Oil, and American Oil might be financially important to the continued survival of the railroad company. As we understand "successful," it is used in the context of the rail carriage activities of the railroad. Nothing in the new exception, however, should prevent the retention of a financially unproductive railroad public purpose activity. The courts should not intrude into the domain of management.
The doctrine of prior public use should operate as a complete bar to condemnation if the subject property is used in furtherance of the railroad's public purposes. However, if the use is principally for common carriage other than a railroad, i.e., a truck terminal unrelated to rail carriage, it does not qualify since condemnation by the railroad for a truck terminal purpose is not authorized.
We recognize that substantial testimony was taken before the trial court concerning the subject properties. Neither the parties nor the trial judge, however, had the benefit of knowing that the railroad under these circumstances bore the burden of showing that the leased premises used by TMT Trailer Ferry, Inc., and the subject submerged lands must be "necessary for the successful operation of the [rail]road." The decision of the District Court to remand for that purpose is proper.
The final point in this case concerns an additional amendment to Section 360.02, Florida Statutes, occurring after the District Court decision. This section grants railroad and canal companies authority to condemn land for terminal facilities, and reads as follows, the underlined portion being the amendment effective May 17, 1974:
"Railroad and canal companies may condemn land for terminal facilities.  Any railroad or canal company, which is a public carrier or intended to be, in the construction of its railroad or canal, or in the extension of the same, for the purpose of securing terminal facilities therefor on any of the waters of any river, lake, bay, gulf or ocean, shall have and they are hereby given the right to condemn for the use of such railroad or canal company, a sufficient area of land therefor and included in which shall be space on shore for depots, yards, switches, turntables, shops and storehouses, and such area in and over the waters to the limit of the channel, natural or artificial, of rivers, lakes, bays, gulf or oceans sufficient for ample room for docks, wharves, elevators, berths for ships, warehouses and storehouses, tracks, switches, and all required facilities for the reception, retention, transfer and forwarding of commerce. However, such right shall be subordinate to the right of the governmental entity wherein the property is located to condemn said property through the exercise of its powers of eminent domain for a public purpose." [Emphasis supplied]
The respondent, City of Miami, contends that this amendment makes this cause moot, the City now having the superior power of condemnation. Petitioner-railroad, on the other hand, contends that the amendment is only applicable where railroad and governmental entities both seek to obtain title by exercising their respective powers of eminent domain, the amendment providing that the railroad may not exercise this right if the local governmental entity itself seeks to take the same property. This is a justiciable issue that must first be considered at the trial level. *550 We adhere to the rule that we will not consider an issue raised initially in this Court.
The order of the Third District Court of Appeal is affirmed as herein modified.
It is so ordered.
ADKINS, C.J., and BOYD and ENGLAND, JJ., concur.
McCAIN, J., dissents.