372 So.2d 152 (1979)
FLORIDA EAST COAST RAILWAY COMPANY, a Florida Corporation, Appellant,
v.
CITY OF MIAMI, a Municipal Corporation of the State of Florida, Appellee.
No. 78-655.
District Court of Appeal of Florida, Third District.
June 12, 1979.
Rehearing Denied July 13, 1979.
*154 Shutts & Bowen and Phillip Newcomm, Miami, for appellant.
Frates, Floyd, Pearson, Stewart, Richman & Greer and Wm. Snow Frates, Miami, for appellee.
Before HAVERFIELD, C.J., and HUBBART and SCHWARTZ, JJ.
HUBBART, Judge.
This is an eminent domain proceeding in which the trial court after a full hearing entered an order of taking [incorporating a prior order of necessity] which authorizes the City of Miami to take certain railroad property located within its municipal limits in order to establish a public park. The railroad appeals therefrom and the City of Miami cross-appeals. We have jurisdiction to review this non-final order. Fla.R. App.P. 9.130(a)(3)(C)(ii).
The central issues presented for review by this appeal are: (1) whether a municipality, and in particular the City of Miami, has the eminent domain right to condemn railroad property located within its municipal limits for the purpose of establishing a public park; and (2) whether the railroad may set up as an affirmative defense to resist such condemnation that the subject property is necessary for the successful operation of the railroad, and, if so, whether such defense was established in this case as a matter of law.
We hold that a municipality, and in particular the City of Miami, has the eminent domain right to condemn railroad property located within its municipal limits for the purpose of establishing a public park under Section 166.411(4), Florida Statutes (1977), and Ch. 24708, Laws of Fla. (1947). We further hold that the railroad may not set up as an affirmative defense to resist the above condemnation in a proceeding brought under the above statutes that the subject property is necessary for the successful operation of the railroad. Even if such a defense was available, we hold that such defense was not established in this case as a matter of law. We finally find no merit in the remaining contentions raised by the railroad upon this appeal. We accordingly affirm on the main appeal and reverse on the cross-appeal.

I
This eminent domain action enjoys a rather protracted history of litigation. It involves a parcel of approximately thirty-two acres of land located on Biscayne Bay *155 in downtown Miami, Florida. The subject property belongs to the Florida East Coast Railway Co. and the City of Miami wants to condemn such property to establish a public park. Past unsuccessful efforts by the City of Miami to condemn this property brought in other proceedings which have been subsequently dismissed are set forth at City of Miami v. Florida East Coast Railway Co., 286 So.2d 247 (Fla. 3d DCA 1973); Florida East Coast Railway Co. v. City of Miami, 321 So.2d 545 (Fla. 1975); Florida East Coast Railway Co. v. City of Miami, 346 So.2d 621 (Fla. 3d DCA 1977).
In the instant case, the City of Miami filed a new petition in eminent domain seeking to condemn the subject property for public park purposes before the Circuit Court for the Eleventh Judicial Circuit of Florida. Substantially unlike any of the prior proceedings brought and subsequently dismissed in this cause, the petition herein was brought inter alia under the authority of Sections 166.401, 166.411(4), Florida Statutes (1977), and Ch. 24708, Laws of Fla. (1947).[1] The Florida East Coast Railway Co. filed an answer setting up six affirmative defenses including the defense of prior public use, namely, that the property sought to be condemned was necessary for the successful operation of the railroad.
The trial court thereafter held an extensive eight day hearing under Section 74.051, Florida Statutes (1977), on the propriety of the taking herein at which testimony and argument of the parties were received. At the conclusion of this hearing, the trial court entered an order of necessity concluding that the City of Miami had the statutory authority to condemn the railroad property to establish a public park, that the City of Miami had shown a necessity for this taking, and that the railroad had failed to establish its affirmative defenses. The trial court also entered an order of taking which incorporated the prior order of necessity as well as a stipulation between the parties as to other remaining issues.
The railroad appeals the order of taking. The City of Miami cross-appeals solely as to the trial court's ruling in the order of necessity that Ch. 24708, Laws of Fla. (1947), and Section 360.02, Florida Statutes (1977), have no application to this case.

II
We have no difficulty in determining that the City of Miami has the statutory authority to condemn railroad property within its municipal limits upon a proper showing of necessity for the purpose of establishing a public park. The railroad, it should be noted, does not contest the trial court's finding that a necessity existed for a public park to be established on the subject railroad property.
The trial court concluded in its order of necessity, and we agree, that the City of Miami has the authority to condemn the subject railroad property for public park purposes under Section 166.411(4), Florida Statutes (1977). That statute provides as follows:
"Municipalities are authorized to exercise the power of eminent domain for the following uses or purposes:... (4) For public parks, squares, and grounds . .."
The above statute means exactly what it says. A municipality may exercise the power of eminent domain for the purpose of establishing a public park. The statute by its terms contains no limitation as to the types of property whereon a public park may be established within the municipality. For that reason the statute is applicable to all property within the municipality including property owned by a railroad.[2]
*156 We are not persuaded by the railroad's contention that Section 166.411(2), Florida Statutes (1977),[3] of the same statute exclusively limits the purposes for which railroad property can be condemned. This statute by its express terms contains no such limiting language, and, in the absence thereof, we must interpret this section of the statute as expanding, rather than limiting the purposes for which railroad property can be condemned. Any other result would require us to rewrite the statute with the requisite limiting language as urged by the railroad. We are not authorized to amend statutes duly passed by the legislature and are required to enforce them according to their plain terms. Tropical Coach Line, Inc. v. Carter, 121 So.2d 779 (Fla. 1960); Winter v. Playa del Sol, Inc., 353 So.2d 598 (Fla. 4th DCA 1977); Art Berman Concrete, Inc. v. Sey Construction Corp., 247 So.2d 791 (Fla. 3d DCA 1971).
Moreover, we agree with the City of Miami on its cross-appeal that Ch. 24708, Laws of Fla. (1947), also authorizes the City of Miami to condemn the subject railroad property for public park purposes. This special act provides as follows:
"Section 1. The City of Miami may enter upon, seize, appropriate and condemn the right-of-way or other lands, including any and all buildings or other structures of any kind or any part of any buildings or structures, of any railroad company, firm or corporation operating within the City of Miami for street, alley or other public purpose, whether such lands be occupied and used by said railroad company or not. Any condemnation action brought by the City of Miami in the exercise of this specific right and power of eminent domain herein granted shall be maintained, and compensation paid, in accordance with the general laws of the State of Florida.
Section 2. The specific power of eminent domain herein granted is an addition to, and an extension of, all powers of eminent domain heretofore granted to the City of Miami." [Emphasis added]
By its express terms, this act authorizes the City of Miami to condemn railroad property by eminent domain "for street, alley or other public purpose." In our view, the establishment of a public park constitutes a "public purpose" within the meaning of this act which the City's power of eminent domain can be exercised to accomplish. Indeed, the railroad makes no contention to the contrary.
Finally, we see nothing in the Municipal Home Rule Powers Act [Ch. 166, Fla. Stat. (1977)] which repeals or supersedes the above special act. Indeed, Section 166.021(4), Florida Statutes (1977), expressly continues such special acts by providing in pertinent part as follows:
"However, nothing in this act shall be construed to permit any changes in a special law ... which affect an area which includes lands within and without a municipality... ." § 166.021(4), Fla. Stat. (1977).
The above statute applies to, and thus continues the special act herein as such special act clearly affects land within a municipality. We decline to rewrite the statute, as urged by the railroad, to restrict it to special acts affecting land lying partially within and partially without a municipality. The statute by its express terms does not so provide.

III
We now turn to the issue of whether the railroad may set up as an affirmative defense to resist the condemnation of its property that the subject property is necessary for the successful operation of the railroad. We conclude that in this proceeding such a defense was not available to the railroad. Even if it was, we further conclude that such defense was not established in the trial court as a matter of law.

*157 A
The law is well-settled that property devoted to a public use cannot be taken and appropriated to another or different public use by a condemnor to whom the power of eminent domain has been delegated[4] unless the legislative intent to so take has been manifested in express terms or by necessary implication. This is known as the doctrine of prior public use. Simply stated, the rule denies exercise of the above power of condemnation where the proposed use will destroy an existing public use or prevent a proposed public use unless the authority to do so has been expressly given by the legislature or must necessarily be implied. Florida East Coast Railway Co. v. City of Miami, 321 So.2d 545, 547 (Fla. 1975); Georgia Southern and Florida Railway Co. v. State Road Dept., 176 So.2d 111, 112 (Fla. 1st DCA 1965); City of Dania v. Central & Southern Florida Flood Control Dist., 134 So.2d 848, 852 (Fla. 2d DCA 1961); 1 Nichols on Eminent Domain § 2.2, p. 205 (3d ed. 1964).
The doctrine of prior public use stems from the recognition that municipal and many private corporations possess general powers of condemnation delegated by the legislature. If one such body may acquire land used or held for a public purpose by another corporation under a general power of condemnation, the latter would logically be free to re-acquire the same property. Florida East Coast Railway Co. v. City of Miami, 321 So.2d 545, 547-48 (Fla. 1975); City of Miami v. Florida East Coast Railway Co., 286 So.2d 247, 251 (Fla. 3d DCA 1973); City of Dania v. Central & Southern Florida Flood Control Dist., 134 So.2d 848, 852 (Fla. 2d DCA 1961). The doctrine, therefore, has particular application when one condemning authority seeks property held by another condemning authority and neither possesses a superior power of condemnation by statute or court decision. See City of Miami v. Florida East Coast Railway Co., 286 So.2d 247, 250 (Fla. 3d DCA 1973).
As applied to property held by a railroad, the doctrine of prior public use precludes the above-stated condemnation thereof if the subject property is devoted to a public use, i.e., if the property is necessary for the successful operation of the railroad. "Necessary" in this context means utilitarian in furtherance of the public use for which a public franchise or certificate of public convenience and necessity has been granted; it does not mean indispensable to the railroad operation. "Successful" in this context means a use correlative with the railroad's public use, as opposed to a financially successful one. The doctrine is inapplicable, however, if the condemnation in question has been expressly or impliedly authorized by the legislature. Florida East Coast Railway Co. v. City of Miami, 321 So.2d 545, 548-549 (Fla. 1975); City of Miami v. Florida East Coast Railway Co., 286 So.2d 247, 251 (Fla. 3d DCA 1973).

B
In the instant case, the eminent domain proceeding was brought inter alia under Ch. 24708, Laws of Fla. (1947) which provides that the City of Miami may acquire by eminent domain:
"... the right-of-way or other lands, including any and all buildings or other structures of any kind or any part of any buildings or structures, of any railroad company, firm or corporation operating within the City of Miami for street, alley or other public purpose, whether such lands be occupied and used by said railroad company or not." [Emphasis added]
It is therefore clear beyond any hope of successful contradiction that this special act expressly authorizes the condemnation of *158 railroad property by the City of Miami within the City's municipal limits regardless of whether the railroad is using or occupying the property. Under the law, the defense that the subject property was necessary for the successful operation of the railroad was, therefore, not available as a defense to the taking herein. The legislature has expressly authorized the condemnation sought in this case.

C
The eminent domain proceeding herein was also brought under Sections 166.401, 166.411(4), Florida Statutes (1977), which authorizes a municipality to condemn railroad property within its municipal limits for the purpose of establishing a public park. Although Section 360.02, Florida Statutes (1977), gives a railroad eminent domain authority to condemn and hold property for certain stated public uses, a recent amendment to that statute provides that such authority "shall be subordinate to the right of the governmental entity wherein the property is located to condemn said property through the exercise of its powers of eminent domain for a public purpose." We agree with the City of Miami on its cross-appeal that Section 360.02, Florida Statutes (1977), is applicable to this case as it clearly subordinates the railroad's eminent domain authority to that of a municipality as to property located within the municipality when such statute is read in pari materia with Sections 166.401, 166.411(4), Florida Statutes (1977).
The significance to this case of the City of Miami's superior power of eminent domain over that of the railroad is that such superior condemnation power eliminates the rationale for the prior public use doctrine. Upon condemnation of the railroad's property by the City of Miami, the railroad herein would lack the eminent domain authority to re-acquire the same property from the City. It was to avoid just such a conflict that the doctrine of prior public use was developed. As no such conflict now exists in this case, the prior public use doctrine is inapplicable as a defense to the taking herein.
It is, therefore, our view that the legislature through Sections 166.401, 166.411(4), 360.02, Florida Statutes (1977), has authorized a municipality by necessary implication to condemn railroad property located within the municipality to establish a public park without regard to whether the railroad is using or occupying the property. Indeed, our review of the legislative history behind the passage of the above amendment to Section 360.02, Florida Statutes (1977), supports the view that not only was the above amendment passed to achieve that result, but that it was passed to achieve that result in this litigation which, in fact, antedates the passage of such amendment. We are not persuaded by the railroad's arguments to the contrary.

D
We recognize that both the Supreme Court and this court in prior decisions in this cause have held that in those proceedings the railroad could set up as an affirmative defense to resist the taking of its property that the subject property was necessary for the successful operation of the railroad. Florida East Coast Railway Co. v. City of Miami, 321 So.2d 545 (Fla. 1975); City of Miami v. Florida East Coast Railway Co., 286 So.2d 247 (Fla. 3d DCA 1973). Those proceedings, however, were not brought, as here, under Ch. 24708, Laws of Fla. (1947), or Sections 166.401, 166.411(4), Florida Statutes (1977), and were subsequently dismissed. See Florida East Coast Railway Co. v. City of Miami, 346 So.2d 621, 622 (Fla. 3d DCA 1977). Thereafter, a new and different petition in eminent domain was filed herein based inter alia on the above statutes. As such, these decisions cannot be considered the law of the case in the proceeding now before the court.
Even in the prior proceeding which is no longer viable, the Florida Supreme Court expressly left open and declined to determine the question of whether the prior public use doctrine was rendered moot and inapplicable by the amendment to Section *159 360.02, Florida Statutes (1977), as above discussed, which was passed after our first decision, but prior to the Supreme Court's decision in this cause. Florida East Coast Railway Co. v. City of Miami, 321 So.2d 545, 549-50 (Fla. 1975). Had that proceeding still been pending, then, our view of the above amendment would still have the result of eliminating the prior public use doctrine in this case  a result permitted, although not endorsed by the Supreme Court's decision.

E
Out of a commendable abundance of caution, however, the trial court heard extensive testimony from the railroad and the City on the merits of the affirmative defense as to whether the property sought to be condemned was necessary for the successful operation of the railroad. This testimony is complex, necessarily in conflict and susceptible of differing factual inferences. The trial court concluded after hearing such extensive testimony that the railroad had not sustained its burden of proving that the subject property was necessary for the successful operation of the railroad. Our review of the record convinces us that there was substantial competent evidence to support this finding. We reject the railroad's contention that this affirmative defense was established as a matter of law. Delgado v. Strong, 360 So.2d 73 (Fla. 1978); Shaw v. Shaw, 334 So.2d 13 (Fla. 1976); Westerman v. Shell's City, Inc., 265 So.2d 43 (Fla. 1972).

IV
We have carefully considered the remaining contentions of the railroad made on this appeal together with a painstaking review of the record and applicable law. We find no merit in any of the contentions raised sufficient to upset the order under review. Egidi Industrial Park Corp. v. Wide Open Spaces, Inc., 335 So.2d 870 (Fla. 3d DCA 1976); Federated Department Stores, Inc. v. Planes, 305 So.2d 248 (Fla. 3d DCA 1974).
The order appealed from is affirmed except as to paragraph nine of the order of necessity. Such paragraph is modified to provide that Ch. 24708, Laws of Fla. (1947), and Section 360.02, Florida Statutes (1977) are applicable to this case in the manner as outlined in this opinion.
Affirmed as modified.
NOTES
[1] The eminent domain proceedings brought in City of Miami v. Florida East Coast Railway Co., 286 So.2d 247 (Fla. 3d DCA 1973), and Florida East Coast Railway Co. v. City of Miami, 321 So.2d 545 (Fla. 1975), where in no way based on these statutes. The eminent domain proceeding brought in Florida East Coast Railway Co. v. City of Miami, 346 So.2d 621 (Fla. 3d DCA 1977), was based in part on Ch. 24708, Laws of Fla. (1947), and § 166.401, Fla. Stat. (1977), but not on § 166.411(4), Fla. Stat. (1977).
[2] It should be noted, however, that § 166.401, Fla. Stat. (1977), precludes a municipality from condemning state or federal property.
[3] "Municipalities are authorized to exercise the power of eminent domain for the following uses or purposes: * * * (2) Over railroads, traction and street car lines, telephone and telegraph lines, all public and private streets and highways, drainage districts, bridge districts, school districts, or any other public or private lands whatsoever necessary to enable the accomplishment of purposes listed in s. 180.06 ..."
[4] Municipal and private corporations are examples of condemnors to whom the power of eminent domain may be delegated by statute. The federal government and the states, on the other hand, exercise direct, not delegated eminent domain authority, and, accordingly, the doctrine of prior public use does not generally apply to them. 1 Nichols on Eminent Domain § 2.2 (3d ed. 1964).