BASKIN, Judge.
For more than a decade, extensive litigation[1] has hampered the City of Miami’s attempts to acquire the P & O Port docks as part of the expansion of Bayfront Park through a bond issue approved by Miami voters. In this appeal and cross-appeal from a Final Judgment and an Amended Final Judgment, we are asked to review: (1) the commencement date for the accrual of interest on the jury award to condemnee Florida East Coast Railway Company (FEC) in a “quick take” condemnation proceeding; (2) the 10% interest rate allowed by the court; and (3) the amount upon which interest was computed. Arguing that FEC’s letter tendering the property to the City did not afford it complete possession, the City maintains that interest on the jury award should not have accrued prior to the date on which it obtained complete possession of the condemned property. Upon consideration of the record, we find the date selected by the trial court to be appropriate under the stipulation between the parties. In addition, we find the 10% rate of interest to be correct under the condemnation statute. Accordingly, we affirm the trial court’s decision concerning the commencement date for the accrual of interest; however, we modify the amount upon which interest is to be paid and vacate that *676 portion of the order restraining FEC from collecting the funds.
The property sought by the City in “quick take” condemnation proceedings consists of the land located in Miami between Bayfront Park and Bicentennial Park. In its defense to the City’s declaration of taking filed pursuant to section 74.051, Florida Statutes (1977), FEC contended that the City’s failure to obtain an ICC certificate authorizing abandonment of the railroad tracks situated on the property precluded the City from maintaining condemnation proceedings. The City responded that the railroad lines were spur tracks and therefore not subject to ICC jurisdiction. Following a hearing on the question of necessity, the trial court ruled that the tracks were spur tracks over which the ICC lacked jurisdiction and granted condemnation. This court affirmed. Florida East Coast Ry. v. City of Miami, 372 So.2d 152 (Fla. 3d DCA 1979), cert. denied, 385 So.2d 756 (Fla.1980).[2] The order of taking entered by the trial court included a stipulation by the parties. The stipulation required the City to deposit in escrow $14,500,000 representing its good-faith estimate of the value of the land. The escrowed funds and interest were to compensate defendants.[3] According to the agreement, FEC remained in possession until entry of the final condemnation judgment at which time the City would take possession.
Subsequently, a jury assessed the value of the condemned property at $23,350,000, and the trial court entered judgment for FEC in that amount, with interest at the rate of 10% commencing April 2, 1981, the effective date of the Final Judgment. On April 9, 1981, FEC “tendered possession” to the City claiming entitlement to the funds on deposit as well as to the difference between the amount of judgment and the funds held in escrow. Although the City objected to the April 2, 1981 date for commencement of interest on the ground that the federal court had enjoined it from taking possession of the property and that it had not actually accepted possession until November 13, 1981, the trial court entered the judgment upon which this appeal is predicated, allowing 10% interest accruing from April 2, 1981. In its Amended Final Judgment, the court stated:
3. Interest on the Final Judgment shall bear simple interest at the rate of Ten Percent (10%) per annum from the date of April 2, 1981, pursuant to F.S. 55.03 and shall accrue at the same rate until paid.

FINDING OF COURT
6. This Court finds as a matter of law that the taking of possession of the property is incomplete by virtue of “Railroad Tracks” running through a portion of the subject property. Whether said railroad tracks are capable of being removed or “abandoned” without the authority of the Interstate Commerce Commission (ICC), a branch of the Federal Government, is an issue that is the subject of three sepa *677 rate lawsuits; first, a consolidated appeal in the Fifth Circuit Court of Appeal;[1] second, a lawsuit presently pending in the United States District Court in and for the Southern District of Florida.[2]
7. Whether an ICC certificate of abandonment is necessary depends on whether the subject property involves spur tracks or a “line of railroad.” If the tracks located on the subject property are spur, the ICC lacks jurisdiction and no certificate is necessary.
8. During the proceedings herein culminating in the Order of Taking, this Court determined that the subject tracks are spur tracks. That holding was affirmed by the Third District Court of Appeal in Florida East Coast Railway Co., 372 So.2d 152 (Fla. 3d DCA 1979), appeal dismissed and cert. den., 385 So.2d 756 (Fla.1980). This Court makes no further finding on this issue.
9. Upon the petition of the Florida East Coast Railway Company, the ICC later adjudicated that the subject property is a “line of railroad” and requires a certificate of abandonment. The City’s appeal from these ICC orders are the appeals referred to in Paragraph 6, supra.
10. The ICC then filed its pending action in the federal district court seeking to enjoin the trial of this cause on evaluation. The federal court refused to enjoin the trial which resulted in this judgment. However, the federal court on February 24, 1981, ordered:
FURTHER ORDERED AND ADJUDGED that as certain issues relating to this case are presently pending before the Fifth Circuit, the parties to this cause shall be prohibited from taking any further action with respect to the property at issue prior to the next hearing on this matter before this Court. The only exception to this in-junctive order shall be participating by any or all of the parties in the state valuation proceeding which is currently scheduled for March 23, 1980.
IT IS FURTHER CONSIDERED, ORDERED AND ADJUDGED:
11. That the Defendant, Florida East Coast Railway Company is restrained and prohibited from drawing, accepting, or collecting any funds from depository until such time as the removal of the “Railroad Tracks” has been authorized or permitted by the federal court.
12. If the Florida East Coast Railway Company wishes to tender complete possession of the property before the final disposition of the federal litigation, Florida East Coast Railway Company shall immediately take whatever steps are necessary to perfect an application to the ICC for abandonment of the “Railroad Tracks” from the subject property. The City shall cooperate with the Florida East Coast Railway to the fullest extent possible without jeopardizing its position in the pending federal litigation.
13. This court reserves jurisdiction to decide all further issues according to law which remain to be adjudicated in these proceedings including, but not limited to, the matters of apportionment, if any; the taxation of costs including reasonable attorneys fees; and lawful interest, if any, due the defendants from the date of this judgment until payment of the award herein made.
Neither the City nor FEC has applied for a certificate of abandonment.
In “quick take” condemnation proceedings, filed pursuant to section 74.061, Florida Statutes (1977), interest accrues “from the date of surrender of possession to the date of payment.”[4] The March 3, 1978, *678 stipulation entered into by the parties recognized the date of entry of Final Judgment, or April 2,1981, as the date of possession by the City.[5] The stipulation provided:
10. It is agreed that FEC may remain in possession of the property involved following the entry of the order of taking and following the deposit of the said $14,-500,000. Such right of possession shall continue until the case is dismissed or until concluded by jury trial on the compensation issues and final judgment is entered pursuant to Chapter 73 of the Florida Statutes, at which time the City shall take immediate possession, (emphasis added).
A stipulation will not be set aside in the absence of fraud, overreaching, misrepresentation, or withholding of facts rendering it void. Smith v. Smith, 90 Fla. 824, 107 So. 257 (1926); City of Vero Beach v. Thomas, 388 So.2d 1374 (Fla. 1st DCA 1980). The City has failed to disclose any reason why the stipulation should be deemed ineffective. Because the March 3,1978 stipulation determined that the City’s possession became effective upon entry of the Final Judgment, we find error in the trial court’s decision to restrain FEC from obtaining compensation prior to removal of the railroad tracks. In prior litigation, the City contended, and this court agreed, that the presence of railroad tracks did not constitute a defense to condemnation. Florida East Coast Ry. v. City of Miami, 372 So.2d 152 (Fla. 3d DCA 1979), cert. denied, 385 So.2d 756 (Fla.1980). Conversely, the City may not raise the presence of the railroad tracks as a ground for delaying payment of its just compensation to FEC. We therefore hold that FEC was entitled to receive compensation on the date indicated by the trial court as the appropriate date for the commencement of interest.
Interest on condemnation awards is controlled by statute. Behm v. Division of Administration, 383 So.2d 216 (Fla.1980). Accordingly, FEC is entitled under section 74.061 to receive interest from the date of possession to the date of payment on the amount by which the verdict exceeded the City’s estimate of value. The City’s good-faith estimate totaled $14,500,000. The difference between that amount and the jury verdict of $23,350,000 is $8,850,000 on which interest is due FEC.[6] Interest accrues at 10%[7] from April 2,1981, until payment. In addition, the City is obligated to pay the balance due on the jury award, that is, the difference between the funds now in escrow and the amount of the jury verdict.
To summarize, FEC should receive the jury verdict of $23,350,000 and, in addition, interest from April 2, 1981 to date of payment on $8,850,000 (representing the difference between the $14,500,000 good-faith estimate and the jury verdict).
*679 Affirmed in part, reversed in part, remanded.
UPON MOTION FOR CLARIFICATION
PER CURIAM.
In accordance with our decision that Florida East Coast Railway Company (FEC) is entitled to the benefit of the escrow fund as of April 2, 1981, and the City having conceded the correctness of FEC’s calculations of the amount due, we clarify our opinion accordingly and adopt FEC’s computations:
1. The $19,691.70 in the escrow fund as of April 2,1981 should be deemed paid over to the FEC on that date pursuant to the stipulation of March 8, 1978 included in the Order of Taking, and the City should be relieved of paying any interest after April 2, 1981 except on the sum of $3,658,890.30 then still due on the $23,-350,000 award of compensation to the FEC.
2. The $1,699,929.04 paid by the City of November 12,1981 should be deemed a further partial payment to the FEC by the City on the award of compensation, and the City should be relieved of paying any interest after November 12, 1981 except on the sum of $1,958,961.26 then still due on the $23,350,000 award of compensation to the FEC.
3. The City of Miami should forthwith pay the remaining sum of the award of compensation in the amount of $1,958,-961.26 together with interest computed as follows:
A) Interest at 10% on the amount of $3,658,890.30 from April 2, 1981 through November 12, 1981 which is the sum of $224,545.60 ($1,002.44 per diem for 224 days); and
B) Interest at 10% on the amount of $1,958,961.26 from November 12, 1981 through the date of payment of the said $1,958,961.26 which amounts to $536.70 per diem.

. City of Miami v. Florida East Coast Ry., 286 So.2d 247 (Fla. 3d DCA 1973), modified Florida East Coast Ry. v. City of Miami, 321 So.2d 545 (Fla.1975); Florida East Coast Ry. v. City of Miami, 346 So.2d 621 (Fla. 3d DCA 1977); Florida East Coast Ry. v. City of Miami, 372 So.2d 152 (Fla. 3d DCA 1979), cert. denied, 385 So.2d 756 (Fla.1980).

. Although the ICC asserted its jurisdiction in earlier proceedings, a federal district court ruled that concurrent jurisdiction lay in the ICC and in the state courts. Florida East Coast Ry. v. City of Miami, No. 78-258-Civ.-SMA (S.D. Fla.). In a separate suit, a federal appellate court established its own jurisdiction to review by appeal ICC decisions concerning an application to abandon railroad tracks, but decided it lacked jurisdiction to entertain an appeal by the ICC from a declaratory action. City of Miami v. ICC, 669 F.2d 219 (5th Cir.1982).

. The stipulated order stated:
4.Should the case go to jury trial pursuant to Section 73.071 of the Florida Statutes for determination of compensation to be paid for the taking of the property or any portion thereof, the funds escrowed pursuant to the preceding paragraph together with the interest earned thereon shall be used for the payment of the compensation found to be due the FEC and other defendants, including attorneys’ fees and costs allowable by law, and if there is any surplus remaining after payment of such compensation, attorneys’ fees and costs, such surplus shall be the property of the City. If the judgment against the City is more than the amount of funds escrowed, the City shall pay the difference as required by law. If the judgment against the City is for less than the amount of funds withdrawn by defendants, defendants shall pay the difference as required by law.

 Nos. 79-2589 and 79-3701, City of Miami v. Interstate Commerce Commission [669 F.2d 219 (5th Cir.1982)] and Intervenor, Florida East Coast Railway Company.

 No. 80-1882, Civ., wherein the Interstate Commerce Commission is Plaintiff and City of Miami is Defendant.

. Section 74.061, Florida Statutes (1979) provides:
74.061 Vesting of title or interest sought.— Immediately upon the making of the deposit, the title or interest specified in the petition shall vest in the petitioner, and the said lands shall be deemed to be condemned and taken for the use of the petitioner, and the right to *678 compensation for the same shall vest in the persons entitled thereto. Compensation shall be determined in accordance with the provisions of chapter 73, except that interest shall be allowed at the same rate as provided in all circuit court judgments from the date of surrender of possession to the date of payment on the amount that the verdict exceeds the estimate of value set forth in the declaration of taking.

. In a second stipulation entered in return for a continuance granted to the City, the parties stipulated that April 2, 1981, would be the effective date of the final judgment and that interest would commence on that date to be entered nunc pro tunc upon the subsequent entry of final judgment.

. We approve the $14,500,000 figure rather than the subsequent $8,000,000 figure estimated by the City because the amount of funds on deposit remained at $14,500,000.

.Section 55.03, Florida Statutes (Supp.1980) provides:
55.03 Judgments; rate of interest, generally.—
(1) A judgment or decree entered on or after October 1, 1980, bears interest at the rate of 10 percent a year unless the judgment or decree is rendered on a written contract or obligation providing for interest at a lesser rate, in which case the judgment or decree bears interest at the rate specified in such written contract or obligation.
(2) Any process, writ, judgment, or decree which is directed to the sheriffs of the state to be dealt with as execution shall bear, on the face of the process, writ, judgment, or decree, the rate of interest which it shall accrue from date of judgment until payment.