CITY OF MIAMI, Petitioner,

v.

INTERSTATE COMMERCE COMMIS-
SION and United States of
America, Respondents.

Nos. 79–2589, 79–3701.

United States Court of Appeals,
Fifth Circuit.*
Unit B

March 1, 1982.

Gordon P. MacDougal, Washington, D. C.,
Floyd, Pearson, Stewart, Richman, Greer &
Weil, Wm. Snow Frates, Stephen N. Zack,
Bertha Claire Lee, Miami, Fla., for petition-
er.

Sidney L. Strickland, Jr., Atty., John P.
Fonte, General Counsel, I.C.C., Barry Gross-
man, Marion L. Jetton, Dept. of Justice,
Washington, D. C., for respondents.

Fritz R. Kahn, Verner, Liipfert, Bernhard
& McPherson, Washington, D. C., for Flori-
da East Coast Railway Co., intervenor.

Before JONES, TJOFLAT and ANDER-
SON, Circuit Judges.

TJOFLAT, Circuit Judge:

The City of Miami (the City) petitions for
review of an Interstate Commerce Commis-
sion (ICC) order declaring an ocean termi-
nal facility owned by intervenor Florida
East Coast Railway (FEC) to be a "line of
railroad" within the meaning of former sec-
tion 1a of the Interstate Commerce Act (the
Act) (now codified at 49 U.S.C. § 10903
(Supp.1979)) and thus subject to ICC juris-
diction.[1] The City presents three alterna-
tive arguments: the ICC had no authority
to declare FEC's ocean terminal a "line of
railroad" because a petition for permission
to abandon that property had not been filed
with the Commission; the ICC was barred
from determining that FEC's ocean termi-

---

* Former Fifth Circuit case, Section 9(1) of Public
Law 96–452—October 14, 1980.

1. While the present codification of this provi-
sion, 49 U.S.C. § 10903 (Supp.1979), speaks of

"railroad lines," the parties use the term "line
of railroad" from former section 1a of the Act
and for convenience's sake so shall we.

nal was a "line of railroad" because of contrary federal and state court adjudications of the issue; the ICC's "line of railroad" determination was not supported by substantial evidence. Because we are without jurisdiction to hear this case, we dismiss the petition for review.

## I.

This case is a small part of the City's eleven-year struggle to acquire for eventual use as a public park a thirty-three acre facility owned by FEC. The latest round in the battle began in 1977 when the City initiated condemnation proceedings in Florida state court. FEC contested this condemnation attempt, asserting that its property, consisting principally of an ocean terminal and some railroad tracks, was a "line of railroad" subject to the ICC's exclusive jurisdiction under former section 1a of the Act. The terminal and tracks could not be condemned or abandoned, according to FEC, without ICC approval issued in the form of a certificate of public convenience and necessity. The state court rejected FEC's position, finding that the railroad tracks at the terminal were merely "spur" tracks exempt from ICC jurisdiction,[2] and issued an "Order of Taking." This order was affirmed on appeal.[3]

While this condemnation case was pending, FEC brought suit in the United States District Court for the Southern District of Florida against the City to block the con-

demnation of its ocean terminal because the ICC had not issued, and had not been called upon to issue, a certificate of public convenience and necessity authorizing FEC to abandon rail service at the terminal.[4] The court dismissed the case, holding that FEC lacked standing to bring the suit and, alternatively, that the Florida state court had concurrent jurisdiction to determine whether FEC's terminal was a "line of railroad" and should be permitted for reasons of comity to litigate the issue to a conclusion. FEC did not appeal this disposition.

In addition to bringing the injunctive action in the federal district court, FEC petitioned the ICC for a declaratory order that FEC's ocean terminal and tracks constituted a "line of railroad." The ICC entertained this petition and invited the City to respond and to participate in the proceedings. The City moved to dismiss FEC's petition, arguing that the Commission had no power under the Act to enter a declaratory order determining this issue.[5] If the Commission had such power, the City's argument continued, it was bound by previous state and federal court determinations that the FEC's terminal was not a "line of railroad."[6] The ICC overruled the City's motion to dismiss, received substantial evidence about the terminal from FEC,[7] and concluded that the terminal was a "line of railroad."[8] The "line of railroad" question was all the Commission had been called upon to decide; consequently, the Commis-

---

2. "Spur" tracks are excluded from ICC jurisdiction under former section 1a(1) of the Act (now codified at 49 U.S.C. 10907(b)).

3. *Florida East Coast Ry. Co. v. City of Miami*, 372 So.2d 152 (3rd DCA 1979), *cert. denied*, 385 So.2d 756 (Fla.1980).

4. *Florida East Coast Ry. Co. v. City of Miami, Florida*, Case No. 78–258–Civ.–SMA, (S.D.Fla.)

5. The City asserted, *inter alia*, that the ICC had never before entered such a declaratory order. All parties agree that the ICC's use of a declaratory order in this context is unprecedented.

6. The City contended that the Florida court's finding that the FEC facility was "spur" track, see text at note 2, *supra*, precluded, on res judicata and collateral estoppel grounds, ICC determination of the "line of railroad" question;

it similarly urged that a comment made by the federal district judge in the injunction proceeding brought by FEC, see text at note 4, *supra*, that the FEC facility was "spur" track, barred ICC determination of the issue.

7. The City declined to introduce any evidence, believing that to do so would somehow prejudice its position that the ICC lacked authority to issue a declaratory order.

8. The ICC issued two published opinions concerning its declaratory order, *Florida East Coast Ry. Co., Petition For Declaratory Order*, 360 I.C.C. 272 (1979), and 360 I.C.C. 449 (1979); the second opinion, however, is merely a clarification and reaffirmation of the first. We thus speak of the ICC declaratory order in the singular.

sion ordered its proceedings "discontinued." The ICC order declaring the FEC ocean terminal facility "line of railroad" is the subject of this appeal.[9]

## II.

We are, of course, a court of limited, statutory jurisdiction. *Huckeby v. Frozen Food Express*, 555 F.2d 542, 545 (5th Cir. 1977). Even where, as here, the parties share the view that the case is properly before us, we must make an independent determination of our jurisdiction. *Save the Bay, Inc. v. United States Army*, 639 F.2d 1100, 1102 (5th Cir. 1981); *In re Grand Jury Proceedings*, 636 F.2d 81 (5th Cir. 1981). In this case, we conclude that jurisdiction is lacking.

Congress has given the court of appeals exclusive authority over

> [a] proceeding to enjoin or suspend, in whole or in part, a rule, regulation, or order of the Interstate Commerce Commission....

28 U.S.C. § 2321(a) (1976). This jurisdictional provision is qualified by 28 U.S.C. § 2342, which grants this court power to review "all rules, regulations, or *final* orders of the Interstate Commerce Commission." 28 U.S.C. § 2342(5) (1976) (emphasis supplied); *Barnes Freight Line, Inc. v. I.C.C.*, 569 F.2d 912, 918 (5th Cir. 1978). Since we are being called upon to review an ICC declaratory order, rather than a Commission rule or regulation, our jurisdiction depends on whether the order is "final." *Id.* See also *San Antonio, Texas v. Burling-ton Northern, Inc.*, 652 F.2d 422 (5th Cir. 1981).

That the Commission discontinued its proceedings after entering its declaratory order is not sufficient, standing alone, to render the order final for purposes of our jurisdiction. *See Barnes Freight Line*, 569 F.2d at 919. Rather, in deciding whether an agency decision is final we must consider:

> whether the process of administrative decision-making has reached a stage where judicial review will not disrupt the orderly process of adjudication and *whether rights or obligations have been determined or legal consequences will flow from the agency action.*

*Port of Boston Marine Terminal Association v. Rederiaktiebolaget Transatlantic*, 400 U.S. 62, 71, 91 S.Ct. 203, 209, 27 L.Ed.2d 203 (1970) (emphasis supplied); *Barnes Freight Line*, 569 F.2d at 919.

The ICC order in the present case does not determine any "rights or obligations," nor do any "legal consequences ... flow from the [ICC's] action." *Port of Boston*, 400 U.S. at 71, 91 S.Ct. at 209. The order neither permits nor prohibits abandonment of the FEC terminal. Moreover, the Commission's decision does not purport to enjoin either FEC or the City from taking any action with respect to the subject property,[10] nor does it have any legal effect on either party's position in the pending state condemnation proceeding or the federal district court action.[11] Though styled a "de-

---

**9.** At the oral argument, counsel informed the court of another development in this continuing controversy. After the ICC issued its declaratory order and this appeal commenced, the Commission filed suit in the United States District Court for the Southern District of Florida to enjoin, under 49 U.S.C. 11702 (Supp.1979), the City's condemnation of FEC's ocean terminal without prior ICC abandonment approval. *I.C.C. v. City of Miami*, Civil Action No. 80–1882–Civ.–WMH (S.D.Fla.). The district court refused to enjoin the valuation phase of the state court condemnation proceeding, but it did require FEC and the City to maintain the status quo as to the ocean terminal until further order of the district court. Subsequently, the condemnation proceeding went to final judgment but the state court stayed execution of its judgment pending resolution of the federal district court action.

**10.** The I.C.C. concedes that it lacks authority to enjoin any railroad from abandoning its facilities. *See, e.g., Nebraska Public Service Commission v. Chicago and Northwestern Transp. Co.*, 348 I.C.C. 27, 29 (1974).

**11.** We are not concerned with the effect the state condemnation court may choose to give the ICC order. Our sole inquiry is whether the ICC order, in and of itself, produces any necessary legal consequences. We similarly do not consider the propriety of the injunctive relief granted the ICC in the pending federal district

claratory order," the Commission's action is nothing more than an advisory ruling that FEC's ocean terminal is a "line of railroad."

Significantly, no party's right to review of any future ICC determination of the terminal's "line of railroad" status is prejudiced by our refusal to review this ICC order. If, for example, an application to abandon the FEC terminal and tracks is made to the ICC, the Commission's first task will be to decide the jurisdictional "line of railroad" issue. *See, e.g., City of Yonkers v. United States*, 320 U.S. 685, 64 S.Ct. 327, 88 L.Ed. 400 (1944). Once the application is disposed of, we will be free to review the Commission's "line of railroad" determination and all other issues relating to the ICC's approval or disapproval of the proposed abandonment. *See Citizens for a Safe Environment v. Atomic Energy Comm.*, 489 F.2d 1018, 1022–23 (3rd Cir. 1974).

Our decision today should not be read as expressing any view as to the propriety of the ICC's action in this case, nor does it suggest that an ICC declaratory order is never reviewable by the court of appeals. *Cf., Powell v. United States*, 300 U.S. 276, 284–85, 57 S.Ct. 470, 475, 81 L.Ed. 643 (1937) (ICC order reviewable when it affects substantive rights of one of the parties). We simply hold that no "final order" is before us. That our decision may prolong what already seems to be interminable litigation is unfortunate, but our duty is clear.

court action, see note 9, *supra*, for that action is not before us in this appeal. Further, we note that in a federal district court proceeding to enjoin an unlawful abandonment of railroad facilities pursuant to former section 1(20) of the Act (now codified at 49 U.S.C. 11702 (Supp. 1979)), the district court has an obligation independently to determine whether such facilities are "line of railroad." *See, e.g., Louisiana & Arkansas Ry. Co. v. Missouri Pacific Ry. Co.*, 415 F.2d 751, 752 (5th Cir. 1969), *cert. denied*, 396 U.S. 1060, 90 S.Ct. 757, 24 L.Ed.2d 754 (1970); *New Orleans Terminal Co. v. Spencer*, 366 F.2d 160 (5th Cir. 1966), *cert. denied*, 386 U.S. 942, 87 S.Ct. 974, 17 L.Ed.2d 873 (1967). *See also, I.C.C. v. Chicago Rock Island and Pac. Ry. Co.*, 501 F.2d 908, 912–14 (8th Cir. 1974), *cert. denied*, 420 U.S. 972, 95 S.Ct. 1393, 43 L.Ed.2d 652 (1975). Thus, the ICC order has no effect on the pending federal court action.

We must dismiss the petition for review for want of jurisdiction.[12]

DISMISSED.

12. We note that in addition to claiming "inherent authority" to issue the declaratory order in this case, the ICC also asserts that it has authority to issue this order pursuant to the Administrative Procedure Act, 5 U.S.C. 554(e) (1976). In terms of our jurisdiction to review the ICC order, however, this assertion is irrelevant, for it is conclusively established that "the APA does not afford an implied grant of subject-matter jurisdiction permitting federal judicial review of agency action." *Califano v. Sanders*, 430 U.S. 99, 107, 97 S.Ct. 980, 985, 51 L.Ed.2d 192 (1977).